# LITTLEFIELD v. TRUSTEES OF THE INTERNAL IMPROVEMENT FUND OF FLORIDA.

## REED v. SAME.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

Argued March 9, 10, 1886.—Decided March 29, 1886.

On the facts: *Held*, That the bonds in controversy should be surrendered to the Trustees of the Internal Improvement Fund of the State of Florida, and should be applied by them in accordance with the prayer of their answer.

The case is stated in the opinion of the court.

*Mr. Horatio Bisbee, Jr.*, for appellant Littlefield.

*Mr. J. Augustus Johnson* and *Mr. John A. Henderson* for appellant Reed submitted on their brief.

*Mr. Wayne McVeagh* for appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

These appeals relate to the ownership of $103,000 in amount of certain bonds of the Pensacola and Georgia Railroad Com-

pany and the Tallahassee Railroad Company. . For convenience they will be hereinafter referred to as "one hundred and three bonds." Many of the matters involved were under consideration by this court in *State of Florida* v. *Anderson*, 91 U. S. 667, and *Railroad Companies* v. *Schutte*, 103 U. S. 118, to which reference is made for a general history of the transactions out of which the present controversy arose.

The facts on which the rights of these parties depend we find to be as follows:

The railroads of the two companies above named were sold by the Trustees of the Internal Improvement Fund of the State of Florida on the 20th of March, 1869, under the provisions of the internal improvement act of Florida, passed January 6, 1855, to pay certain bonds, of which those now in dispute are a part. A statement of the provisions of this act will be found in the report of the case of the *State of Florida* v. *Anderson*, beginning at page 670. A conveyance of the railroads to the purchasers at the sales was obtained, to use the language of the counsel for the appellant in Littlefield's case, "through a well planned and cleverly executed fraud," without the payment. of about $472,000 of the purchase money. This sum represented an equal amount of bonds outstanding, which included the one hundred and three now in question. A history of the facts connected with this transaction will be found in the report of *Railroad Companies* v. *Schutte*, beginning at page 121. George W. Swepson was under obligations to pay what remained due on the purchase money, or, which is the same thing, to get up and surrender to the Trustees of the Internal Improvement Fund the outstanding bonds for cancellation.

On the 24th of June, 1869, an act was passed by the general assembly of Florida by which George W. Swepson, Milton S. Littlefield, and their associates, were incorporated under the name of the Jacksonville, Pensacola and Mobile Railroad Company. The important provisions of the charter of this company will be found in the report of the *Schutte Case* at page 123, and following. Afterwards the title to the two railroads which had been purchased was transferred to the corporation thus created. On or before the 10th of November, 1869, Mil-

ton S. Littlefield succeeded to all the rights of George W. Swepson in the premises, and became bound to take up and surrender the outstanding bonds, or pay the balance due on the purchase money in cash.

On the 2d of August, 1869, drafts were drawn by George W. Swepson on and accepted by Milton S. Littlefield, in favor of Edward Houston, for $109,140. These drafts grew out of transactions between the parties relative to the Jacksonville, Pensacola and Mobile Railroad Company and the Florida Central Railroad Company, and in some way Houston held one hundred and ten of the bonds of the Pensacola and Georgia Railroad Company and Tallahassee Railroad Company as collateral security. These bonds were part of those outstanding which Swepson was bound to take up and surrender, and they included the one hundred and three now involved. The drafts were likewise among the obligations which Littlefield assumed to pay when, in November following, he took Swepson's place in these transactions.

On the 13th of May, 1870, Littlefield entered into a contract with Houston, by which he bought the drafts above mentioned, and certain shares of the stock of the Florida Central Railroad Company, and gave his draft for $163,020.70 on S. W. Hopkins & Co., the financial agents of the Jacksonville, Pensacola and Mobile Company, therefor. Under this contract Houston was to hold the one hundred and ten bonds as collateral for the draft then given, and to deliver them to Littlefield when this draft was paid. Various other contracts were afterwards made between Littlefield and Houston which looked to a payment of the draft through the securities of the Florida Central Railroad Company, but no payment was in fact made before June 8, 1870, when Littlefield, as president of the Jacksonville, Pensacola and Mobile Company, was in negotiation with Harrison Reed, governor of Florida, for an exchange of the bonds of the company for those of the State, under the provisions of the charter. In the progress of these negotiations it was found that the unpaid purchase money stood in the way of the exchange, and thereupon Littlefield, still acting as president of the company, addressed a letter to the governor,

who was also *ex officio* one of the Trustees of the Internal Improvement Fund, a copy of which is as follows:

"TALLAHASSEE, FLA., *June* 8, 1870.

"Hon. Harrison Reed, Gov. State of Florida.

"SIR: I have the honor to state that in addition to the bonds of the Pen. & Geo. and Tallahassee Railroad Companies already deposited with the Board of Trustees Int. Imp. Fund, I have at the railroad office $41,350.

| | | |
|---|---:|---:|
| Bro't over................................... | | $41,350 |
| And have secured..................... | $110,000 | |
| "          " .................................. | 70,000 | |
| "          " .............................. | 15,000 | |
| | | 195,000 |
| | | $236,350 |
| Total outstanding............................... | | $227,250 |

Respectfully,                     M. S. LITTLEFIELD,
                    *Pres't J., P. & M. R. R. Co.*"

The $110,000 bonds here referred to were those held under the contracts between Littlefield and Houston. After this letter Littlefield delivered to the governor a draft of which the following is a copy:

"$227,250.                     TALLAHASSEE, *June* 8, 1870.

"On demand, when in funds, pay to the order of his Excellency, Harrison Reed, Gov., two hundred and twenty-seven thousand two hundred and fifty dollars, value received, and charge the same to account of—
                    M. S. LITTLEFIELD,
                    "*Pres't J., P. & M. R. R. Co.*
"To Messrs. S. W. Hopkins & Co., 71 Broadway, N. Y."

This draft was never paid, but on its delivery the exchange of bonds of the State for those of the company was made by the governor, acting for the State, and by Littlefield, acting

for the railroad company. Out of this exchange the suits of the *State of Florida* v. *Anderson* and *Railroad Companies* v. *Schutte* arose, as well as much other litigation in the courts of the State and of the United States.

After the delivery of the State bonds to Littlefield the draft of $163,020.70 held by Houston was paid by Hopkins & Co. out of the proceeds of the sale of these bonds, or upon their security, and on the 12th of April, 1871, an agreement was made between Houston and S. W. Hopkins & Co., the drawees, by which the one hundred and three bonds in question were deposited with Mariano D. Papy, to be held by him and not delivered to any person unless directed to do so by M. S. Littlefield and S. W. Hopkins & Co. jointly, or unless directed to be delivered to Littlefield by Hopkins & Co., or to Hopkins & Co. by Littlefield. It was also further agreed that there should be no delivery to Littlefield until certain suits which had been begun against Houston, and which were particularly described, had been dismissed. On the 14th of June, 1872, Papy was directed by Hopkins to deliver the bonds to Littlefield on the dismissal of the suits. It was stipulated at the hearing of the present case below that these suits had then been dismissed, but at what precise time does not appear.

On the 17th of July, 1872, Edward C. Anderson, Jr., and others, holders of some of the $472,000 of unpaid bonds, began a suit in the Circuit Court of the United States for the Northern District of Florida, for themselves and all other holders of like bonds who might choose to become parties plaintiff, on the usual terms, against the Jacksonville, Pensacola and Mobile Railroad Company and others, including Milton S. Littlefield and the Trustees of the Internal Improvement Fund, to subject the railroad of the railroad company, defendant, to the payment of their bonds. On the same day the one hundred and three bonds in the hands of Papy were by him delivered, under an order of the Superior Court of Chatham County, Georgia, to "T. Mayhew Cunningham, cashier of the Central Railroad and Banking Company of Georgia, to be by him deposited in the vault of the said bank, and there to be safely kept subject to the further order of the court." Afterwards,

in April, 1873, they were deposited by Cunningham with the Circuit Court of the United States for the Northern District of Florida, subject to the orders of that court in the Anderson suit, where they have ever since remained.

On the 18th of June, 1875, the following order in reference to these bonds was entered in the Anderson suit :

"It is further ordered, that the said master shall give immediate notice through the public gazettes heretofore used by him for such purpose to all parties who may claim an interest, direct or indirect, in the bonds which have been deposited with him by T. Mayhew Cunningham, trustee ; that he hold said bonds in his custody subject to the final order of this court; that the said bonds are claimed by the Trustees of the Internal Improvement Fund as having been purchased from Edward Houston by the Jacksonville, Pensacola and Mobile Railroad Company, under agreement with said trustees, for the purpose of cancellation ; that upon petition filed with him, the said master, and ten days' notice to the said trustees, and at any time before the first day of the next term of the court, he will take testimony touching the claim or interest or title of any such petitioner upon or to the said bonds, or any part thereof ; and that unless petition be filed in accordance with this order, all right, title and interest of any such person to or in the said bonds would be forever adjudged to be barred."

The notice required by this order was duly given, and on the 13th of July, 1876, the Trustees of the Internal Improvement Fund filed their petition in the master's office, asking that the bonds be delivered to them, claiming title under the transaction between Littlefield and the governor on the 8th of June, 1870, at the time of the exchange of bonds, and also under a decree of the Circuit Court of Duval County, Florida, on the 20th of August, 1875, in a suit brought by them on the 20th of March, 1872, against the Jacksonville, Pensacola and Mobile Railroad Company, Milton S. Littlefield and others, in which their right to the bonds under their claim was fully established as against all the parties to that suit. Calvin Littlefield was, however, not a party.

On the 18th of March, 1872, John H. Miller began a suit

against Milton S. Littlefield in the Circuit Court of Duval County, Florida, to recover a debt of $50,000. In this suit a judgment was rendered April 18, 1872, for $50,708, and on the 15th of November, 1872, Miller filed a creditor's bill in the Circuit Court of the United States for the Northern District of Florida to subject the one hundred and three bonds to the payment of the judgment as the property of Milton S. Littlefield. Under this bill a decree was rendered December 2, 1873, directing a sale of the bonds for that purpose. Afterwards, on the 5th of August, 1875, the bonds were sold to Robert J. Washington, whereupon he appeared in the Anderson suit and asked leave to defend his interest and title. Washington afterwards, on the 22d of December, 1881, assigned his interest in the bonds to Edward J. Reed.

On the 23d of May, 1877, J. Fred. Schutte and others, holders of State bonds given in exchange for the bonds of the Jacksonville, Pensacola and Mobile Railroad Company, brought a suit in the Circuit Court of the United States for the Northern District of Florida for the foreclosure of the statutory lien of the State as security for the bonds of the railroad company given in exchange for those of the State. In the bill it was claimed, among other things, that this lien of the State was superior to that of the Trustees of the Internal Improvement Fund for the balance of the original purchase money, and as to the one hundred and three bonds the following averment was made:

"Complainants are informed and believe that said defendant, Milton S. Littlefield, made some agreement with said George W. Swepson to perform the obligations which the latter undertook with said trustees to do, viz., to purchase said unpaid Pensacola and Georgia and Tallahassee Railroad Companies' bonds; that said Littlefield did in fact purchase of said Edward Houston one hundred and three of said bonds in performance of such contract, which bonds are now deposited in the registry of this court to the credit of a cause therein pending, in which Edward C. Anderson et al. are plaintiffs and the Jacksonville, Pensacola and Mobile Company et al. are defendants; that said bonds are claimed by divers persons under some

contract with said Littlefield, which persons had full knowledge that said bonds were paid for out of the money for which the bonds issued by Governor Reed to the said Jacksonville, Pensacola and Mobile Company were sold as before set forth; [and that] said one hundred and three bonds have never been in the actual possession of said Littlefield. Complainants are advised that they should be delivered to said Trustees of the Internal Improvement Fund, and they should take such proceedings as may be necessary to procure the same to be done."

On the 31st of May, 1879, a decree was entered in the cause declaring that the Trustees of the Internal Improvement Fund had a first lien on the property of the Jacksonville, Pensacola and Mobile Company "to secure the payment to said trustees of the sum of $463,175.27, and interest thereon since March 20, 1869, at the rate of eight per cent. per annum," and directing a sale for the benefit of the Schutte bondholders, subject to this prior lien. This prior lien was on account of the unpaid purchase money at the original sale, and the amount found due included the one hundred and three bonds; but there was no express adjudication as to the ownership of these bonds, or as to the right of the railroad company or of the Schutte bondholders to have them applied towards the satisfaction of the debt to the trustees. From this decree the Schutte bondholders did not appeal, but on appeals by some of the other parties to the suit the decree was affirmed by this court January 17, 1881, *Railroad Companies* v. *Schutte*, and under its authority the road was afterwards sold.

On the 14th of February, 1882, Calvin Littlefield filed in the Anderson suit a petition to have the one hundred and three bonds delivered to him, and in his petition he stated that the Trustees of the Internal Improvement Fund and Edward J. Reed also claimed an interest. As to his own title, he stated that, on the 13th of July, 1871, Milton S. Littlefield assigned the bonds "in possession and control of M. D. Papy" to him as security for the payment of a debt of $50,000, and that on the 11th of January, 1872, this assignment was made absolute "that the expenses of a foreclosure may be avoided."

The evidence shows that while the suit of *Miller* v. *Littlefield*, above referred to, was pending, and under which the bonds were sold to Washington, these title papers of Calvin Littlefield were sent by him to J. J. Finlay, an attorney-at-law at Jacksonville, Florida, for some purpose, and that under date of December 24, 1873, Finlay wrote a letter to Littlefield which contained the following :

" As General Littlefield had not yet been examined before the master in chancery in the matter of the creditor's bill, about which I wrote you in my last, the agreement above mentioned reached me in time to enable him to answer more fully and satisfactorily as to the ownership of the stocks and bonds mentioned in said agreement. He will answer that these securities belong to you and not to him. I am of the opinion that you are the *bona fide* owner of these securities under and by virtue of said agreement, and that any decree made in the case of *Miller* v. *M. S. Littlefield* is not binding on you, for the reason that you were not, and are not, a party to said suit. For the present, therefore, I do not see that it is necessary to take any step or incur the expense of any independent proceeding in the matter. As things progress, however, if it should become important for the protection of your interests to institute proceedings it can be done."

It does not appear that Calvin Littlefield gave any notice of this assignment to Papy while the bonds were in his hands, or to any one else claiming an adverse interest prior to the filing of his petition.

Edward J. Reed answered the petition, setting up his title as the assignee of Washington, and asking that the bonds be delivered to him. The Trustees of the Internal Improvement Fund also answered, setting up their title, and asking that the bonds be surrendered to them and credited on the decree in the Schutte case " as of and for the amount due on said bonds, principal and interest, on the 12th of April, 1871."

The Circuit Court, on the 23d of June, 1882, decreed that the bonds be surrendered to the Trustees of the Internal Improvement Fund, and applied in accordance with the prayer of their answer. From this decree Calvin Littlefield and Edward

J. Reed took appeals, which have been docketed here as separate causes.

Upon the facts found, and about which there is substantially no dispute, we have no hesitation in affirming the action of the Circuit Court. Although the contracts under which the bonds passed from the hands of Houston to Papy, and from Papy to the Circuit Court in the Anderson suit, were in the name of Milton S. Littlefield, all payments for the bonds after June 8, 1870, were made from the funds of the Jacksonville, Pensacola and Mobile Company. What was done by Littlefield, at the time of the exchange of bonds with the governor, had the effect of transferring the one hundred and three bonds to the Trustees of the Internal Improvement Fund, subject to the lien of Houston as security for his draft of $163,020.70. When that draft was paid and the lien satisfied, the equitable title of the trustees was perfected, and thereafter the bonds were held by Papy, and his successors in possession, for them. It follows that, at the time Littlefield undertook to transfer the bonds to Calvin Littlefield, he had nothing to transfer. All his interest had long before been passed to the trustees. Neither does Calvin Littlefield occupy the position of a purchaser without notice of the prior claim of the trustees, because when he took his title the bonds were in the possession of Papy, who was in legal effect trustee for whom it might concern.

The same is true of the claim under which Edward J. Reed holds. When the bill was filed by Miller to subject the bonds to the payment of his judgment against Littlefield, they belonged to the trustees and not to Littlefield, and consequently nothing passed by the sale in that suit.

It is contended, however, that, as the trustees "insisted in the Schutte case on a lien for the full amount of the unpaid purchase money which was decreed to them, and that the one hundred and three bonds were outstanding," they "are estopped now from claiming that these one hundred and three bonds should be delivered to them and cancelled, and a credit given therefor on such decree." This it is claimed amounted to an abandonment by the trustees of their title to the bonds under the arrangement between Littlefield and

the governor, which enured to the benefit of Milton S. Littlefield or his assigns. To this we cannot agree. No issue was made in that suit as to the actual ownership of the bonds. The Trustees of the Improvement Fund did not claim that they were not entitled to the bonds, nor that the amount due on them should not be credited on the account for unpaid purchase money if their title should be established, but that until it was established no such credit should be given. Neither did the Schutte bondholders claim that the credit should be given at once, but that the necessary proceedings be had to establish the title and thus secure the application. When the decree was rendered the title had not been settled, and so no credit was then allowed, but nothing was done to prevent the trustees from making good their claim then pending in the Anderson suit, and, if successful, from giving the proper credit on the decree. That is what they are seeking to do here. Having presented their petition for a delivery of the bonds, they were met by the counter petitions of Calvin Littlefield and Reed, and thus the rights of all the parties have been presented for final adjudication. The question involved is not one of security but of title. The bonds are held by the court for whom it may concern, and the point to be settled is to whom shall they be delivered. Aside from the claim of abandonment put forth by Calvin Littlefield, they belong, as we have seen, to the Trustees of the Improvement Fund, as Milton S. Littlefield, the common source of title, first conveyed to them. It is conceded that the trustees have never actually reconveyed to Milton S. Littlefield; neither have they executed any formal conveyance or release to Calvin Littlefield. All they have done is to take a decree in their favor for what would be due them if their title should fail; and this, while a suit was pending to establish that title. Other parties were foreclosing a mortgage junior to theirs, and it became necessary to fix the amount of their prior lien. This the other parties were willing should be done before their disputed title was settled, and so to save themselves from loss in case of defeat they took a decree for what would be their due in that event. To that the junior mortgagees did not object. Their effort had been to

defeat the prior lien altogether. Having failed in that, they were willing to submit to a decree for the larger amount, leaving the disputed question as to the one hundred and three bonds to be settled afterwards in the proceeding that had been begun for that purpose, or any other that might be instituted. This was not an abandonment by either party. The decree was silent as to these bonds, and the petition for their delivery to the trustees on file in the Anderson suit, where the bonds were, was allowed to remain. It is now being prosecuted by the trustees as a mode of obtaining satisfaction of the decree in their favor. If they succeed it may enure to the benefit of the purchasers at the sale under the Schutte decree, but of this Calvin Littlefield has no right to complain. If he did not own the bonds it is a matter of no importance to him what disposition the trustees may make of them. All his rights depend alone on his ownership. If he is not the owner he is entirely out of all the litigation between the rest of the parties. Neither the railroad company nor the Schutte bondholders, who are alone interested in the amount for which the sale was made, are here to complain. The trustees alone can control the bonds. Having protected all who had the right to look to the original unpaid purchase money for the satisfaction of their bonds, they have performed their whole duty as trustees, so far as the bondholders are concerned.

*The decree of the Circuit Court is affirmed.*