COMMONWEALTH *vs.* JAMES C. McGRUDER.

Hampden.    March 3, 1965. — April 1, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Evidence,* Opinion: expert; Sex offender.

At the hearing of a petition for commitment of one to a treatment center as a sexually dangerous person pursuant to G. L. c. 123A, § 6, opinions of the two psychiatrists who had examined and diagnosed the defendant during his sixty day commitment to the center, that he was a sexually dangerous person, "based . . . upon information contained in . . . records" available to the staff at the center, were made admissible by the statute even though the basis of the opinions was hearsay.

PETITION for commitment filed in the Superior Court on April 30, 1963.

The case was heard by *Macaulay,* J.

*William C. Flanagan* for the defendant.

*Matthew J. Ryan, Jr.,* District Attorney, for the Commonwealth.

SPALDING, J.   In these proceedings brought under G. L. c. 123A, § 6, the defendant was found to be a sexually dangerous person and was committed to the treatment center at Bridgewater for an indeterminate period of from one day to life.   The case comes here on the defendant's exceptions to certain rulings on evidence.

The rulings occurred in these circumstances.   The finding that the defendant was a sexually dangerous person rested on the opinions of two psychiatrists, Dr. Newman Cohen and Dr. Daniel Weiss, called by the Commonwealth. Prior to the present commitment hearing both doctors had examined the defendant in accordance with the provisions of § 6.   That section empowers the court, on a showing that a prisoner under sentence may be a sexually dangerous person, to order him committed to the treatment center established by § 2 "for examination and diagnosis for a period not exceeding sixty days."

Dr. Cohen testified on direct examination that the defendant was a sexually dangerous person within the definition of c. 123A.   When asked to give the basis for his opinion, he testified to a series of incidents in which the defendant was involved.   It appeared that these incidents were based on a study of the records at the Massachusetts Correctional Institution at Concord which were made available to the staff at the treatment center.   At this point counsel for the defendant objected on the ground that the doctor's testimony was based on hearsay.   The judge stated that the witness could complete his testimony and when he had concluded the defendant could move "to strike it out if it's not connected up."   After the direct examination of Dr. Cohen had been completed, the defendant moved that his opinion be struck "because it was based upon hearsay evidence."   The motion was denied subject to the defendant's exception.[1]

On cross-examination Dr. Cohen testified that the only

---

[1] The incidents recited by Dr. Cohen included the following: placing a wire around a girl's neck; choking girls; and the rape of a thirteen year old girl by use of threats, violence and a gun.

person interviewed by him was the defendant; that all other information was obtained from records, and that he "based his opinion upon information contained in these records." The defendant renewed his motion to strike and it was denied subject to his exception.

Dr. Weiss, the other psychiatrist who had also examined the defendant at the treatment center, testified on direct examination that the defendant was a sexually dangerous person. He based his opinion on information (obtained from the records) that the defendant "had been convicted on two occasions of sexual crimes involving violence in connection with young girls." The defendant "objected to Dr. Weiss' testimony on the same grounds as he objected to Dr. Cohen's testimony." The objection was overruled, subject to the defendant's exception.

The defendant testified that he had "a long record in New York and two of the offenses . . . [were] of a sexual nature." He denied that he ever used a gun or that he had ever used threats or violence.

The evidence of the defendant's sexual misbehavior which formed the basis of the psychiatrists' opinions was obviously hearsay. A party cannot put in incompetent evidence under the guise of fortifying the opinion of his witness. *Hunt* v. *Boston,* 152 Mass. 168, 171. *Commonwealth* v. *Sinclair,* 195 Mass. 100, 108. *Commonwealth* v. *Russ,* 232 Mass. 58, 74. *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 199. Compare *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 261. Unless this evidence was made admissible under the statute it ought not to have been received. We are of opinion that it was admissible.

Section 6, under which the present commitment proceedings were brought, provides that when the court makes the sixty day commitment to the treatment center for examination and diagnosis (which is a condition precedent to a commitment under § 6) the commitment shall be "under the provisions of section four in so far as may be applicable." Under § 4, the examination and diagnosis must be super-

vised by not less than two psychiatrists who within the commitment period must file with the court a "written report of such examination and diagnosis, and their recommendations for the disposition." Section 4 further provides that the court "shall supply to the examining psychiatrists copies of the court record, and the probation officer shall supply them with the probation record of the person committed for examination. The probation record shall contain a history . . . [of] such person's previous offences and previous psychiatric examinations and such other information as may be helpful to assist such psychiatrists in making their diagnosis."

In § 5, which describes the manner in which hearings under § 6 shall be conducted, it is provided that it "shall be competent to introduce evidence of the person's past criminal and psychiatric record and any other evidence that tends to indicate that he is a sexually dangerous person. Any psychiatric report filed under this chapter shall be admissible in evidence in such proceeding."

From the foregoing provisions, the legislative purpose is plain. The examining psychiatrists are to have access to a wide range of information in making their diagnoses. This would include court records, probation records, histories of prior offences and of prior psychiatric examinations. § 4. It is also clear that the opinions of the examining psychiatrists based on such information were to be competent. § 5. These provisions are a very radical departure from the rules of evidence which ordinarily govern. See *Commonwealth* v. *Russ*, 232 Mass. 58, 74. But the Legislature could very well have concluded that to require the examining psychiatrists to base their opinions on matters within their personal knowledge or on evidence admissible under conventional rules would be unduly restrictive. And it might have concluded that since most of the information available to psychiatrists would be contained in psychiatric examinations and court and probation records, it would be sufficiently trustworthy. In any event the Legislature has made its policy clear in this regard and it is not for us to quarrel with it.

If the opinions of the examining psychiatrists are based on incorrect information it would be open to a defendant, as was done here to some extent, to refute it. It is to be noted that proceedings under c. 123A are civil and not penal (*Commonwealth* v. *Page,* 339 Mass. 313, 316–317). Hence, the right of confrontation secured to a defendant in criminal cases under art. 12 of our Declaration of Rights is not involved. See *Commonwealth* v. *Slavski,* 245 Mass. 405, 414–418.

*Exceptions overruled.*