LEROY J. PETERSON, petitioner.

Suffolk. February 5, 1968. — April 3, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Constitutional Law,* Due process of law, Equal protection of laws, Confrontation of witnesses, Sex offender. *Evidence,* De bene evidence, Hearsay. *Words,* "Sexually dangerous person."

Outline of the procedure set forth in G. L. c. 123A for commitment of a prisoner to a treatment center as a sexually dangerous person. [113–114]

G. L. c. 123A in general is not void on its face, and the procedure therein for committal of persons to a treatment center as sexually dangerous meets the constitutional requirements of procedural due process as to any person who cannot show that the procedure was defective as applied to him. [114]

A party objecting to evidence admitted de bene at a trial has no ground to support his objection if he does not later move to have the evidence struck. [115]

One adjudicated to be a sexually dangerous person after a court hearing under G. L. c. 123A, § 6, could not subsequently successfully challenge the adjudication in a habeas corpus proceeding on the ground that hearsay evidence was erroneously introduced at the hearing and deprived him of his constitutional right to confront witnesses where it appeared that he had saved no exception to the admission of the evidence and had been represented by experienced counsel. [115–116]

G. L. c. 123A, providing in §§ 4 and 6 for adjudication as "sexually dangerous" of persons who have been convicted of certain sex offences or of prisoners did not deprive a prisoner adjudicated a sexually dangerous person under § 6 of equal protection of the laws in that "individuals . . . admittedly sexually dangerous" but not embraced within the classifications of §§ 4 and 6 were not subject to c. 123A. [116–117]

G. L. c. 123A, § 1, as amended through St. 1958, c. 646, § 1, defining the words "sexually dangerous person" as used in c. 123A, is not unconstitutionally vague by reason of the use of the word "misconduct" in the phrase "misconduct in sexual matters" when that word is read with the other language of the definition. [117]

PETITION for a writ of habeas corpus filed in the Supreme Judicial Court for the county of Suffolk on June 26, 1967.

The case was reserved and reported by *Reardon, J.*

*John D. O'Reilly, III,* for the petitioner.

*Willie J. Davis,* Assistant Attorney General, for the Superintendent of the Massachusetts Correctional Institution at Bridgewater.

SPALDING, J. This is a petition for a writ of habeas corpus against the superintendent of the Massachusetts Correctional Institution at Bridgewater (Bridgewater). The petitioner alleges that in the proceedings resulting in his commitment to Bridgewater under G. L. c. 123A, § 6, as a sexually dangerous person he was denied due process of law and equal protection of the laws. At the request of the parties the single justice reserved and reported the case without decision on the petition, the return and a stipulation made by the parties.

The petitioner pleaded guilty to two indictments charging assault with a dangerous weapon and was sentenced to two concurrent indeterminate terms in the Massachusetts Correctional Institution at Concord (Concord). Because of de-

ductions and credits, the petitioner normally would have been discharged from confinement on May 7, 1965. On May 6, 1963, the superintendent of Concord filed in the Superior Court a motion and report under G. L. c. 123A, § 6, seeking a commitment of the petitioner to the treatment center, established in § 2, for examination and diagnosis for a period not exceeding sixty days. Following this examination a petition was filed by the district attorney in the Superior Court for commitment of the petitioner as a sexually dangerous person. Following a hearing, the petitioner was adjudged to be a sexually dangerous person and was committed to the treatment center at Bridgewater for an indeterminate period of from one day to life. G. L. c. 123A, § 6. He is currently confined there. The petitioner brought the case here on exceptions and these were overruled. *Commonwealth* v. *Peterson*, 348 Mass. 702, cert. den. 384 U. S. 909.

Thereafter, the petitioner sought a writ of habeas corpus in the United States District Court for the District of Massachusetts. The petition in that court is similar to the present petition. The judge of the District Court declined jurisdiction because of the petitioner's failure to exhaust remedies available to him in the State court. In his Memorandum and Order the judge noted that the petitioner was seeking to raise points which either had not been raised in the Superior Court or, if raised, had not been pressed in this court and that there was, therefore, no compliance with 28 U. S. C. § 2254 (1958). As an additional reason for remanding the case the judge was of opinion that two recent decisions of the Supreme Court (*Specht* v. *Patterson*, 386 U. S. 605, and *In re Gault*, 387 U. S. 1) "cast . . . serious doubt on the constitutionality of the procedures followed . . . [in the petitioner's] committal hearing," and it was "appropriate that the due process issue, in the light of these . . . decisions, be reëxamined by the Courts of the Commonwealth at the same time."

1. The petitioner argues that he was denied due process because he was deprived of the right to confront the witnesses against him. The petitioner relies on *Specht* v.

*Patterson,* 386 U. S. 605. That case involved the application of a Colorado statute (the Sex Offenders Act, Colo. Rev. Sts. Anno. c. 39, art. 19, §§ 1–10 [1963]) under which the petitioner who had been convicted of indecent liberties under another statute was sentenced under the Sex Offenders Act for an indeterminate term of from one day to life without notice and full hearing. The Sex Offenders Act could be brought into operation whenever the trial court "is of the opinion that any . . . person [convicted of specified sex offences], if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." Under the Colorado procedure the petitioner was given a psychiatric examination and a psychiatric report was prepared and given to the trial judge prior to sentencing. There was, however, "no hearing in the normal sense, no . . . confrontation" (386 U. S. 605, 608). The Supreme Court held that the requirements of due process were not satisfied by this procedure. It interpreted the invocation of the Sex Offenders Act as the "making of a new charge leading to criminal punishment" and concluded that "[d]ue process . . . requires that . . . [the petitioner] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine and to offer evidence of his own." (386 U. S. at 610). See *Gerchman* v. *Maroney,* 355 F. 2d 302 (3d Cir.).

The procedure condemned in the *Specht* case is very different from that set forth in G. L. c. 123A. Although our procedure was summarized in *Commonwealth* v. *McGruder,* 348 Mass. 712, 714–715, it will be useful to set it forth here.

Under G. L. c. 123A, § 6, if it appears that a person under sentence is a sexually dangerous person, a psychiatrist shall examine him and file a written report. If the report indicates that the person may be a sexually dangerous person, the report is transmitted to the clerk of courts for the county wherein the person was sentenced, together with a motion to commit the person for an examination and diagnosis period not exceeding sixty days. If the motion is granted the person will be committed under the supervision of not,

less than two psychiatrists. G. L. c. 123A, §§ 4, 6. The psychiatrists must file their report within the sixty day period and recommend a disposition of the person committed. The court supplies the psychiatrists with the probation record of such person containing information as to past offences, prior psychiatric examinations and such other information as may be of assistance to them. The attorney of the committed person is entitled as of right to receive a copy of the psychiatric report upon request. G. L. c. 123A, § 7.

If the report clearly indicates that the person is sexually dangerous, the district attorney files a petition for commitment. Section 6 provides for notice to the prisoner or to his guardian or next friend if it appears that he is incapable of contesting the report. "Upon the motion . . . [of the prisoner] or upon its own motion the court shall, if necessary to protect the rights of such person, appoint counsel for him." § 5. And the prisoner is entitled to process to compel the attendance of witnesses on his behalf. § 5.

Under the procedure just outlined the prisoner is entitled to adequate notice, a hearing, compulsory process, and the assistance of counsel who is entitled to receive the reports of the examining psychiatrists. This is vastly different from the procedure condemned in the *Specht* case. Rather it is closer to the procedure approved in *Minnesota ex rel. Pearson* v. *Probate Court of Ramsey County*, 309 U. S. 270, 275–276.

From our analysis of c. 123A we are of opinion that the statute in general is not void on its face and that the committal procedure therein provided meets the requirements of procedural due process. It is not open to the petitioner to show that there might be circumstances in which the procedure was constitutionally defective. It is incumbent on him to show that it was defective as applied to him. See *Minnesota ex rel. Pearson* v. *Probate Court of Ramsey County*, 309 U. S. 270, 275–277. "Only one whose rights are impaired by a statute can raise the question of its constitutionality, and he can object to the statute only as applied to him." *Massachusetts Commn. Against Discrimination* v. *Colangelo*, 344 Mass. 387, 390–391, and cases cited.

More specifically, the petitioner contends that hearsay evidence was introduced which deprived him of his right of confrontation. It is true that in a commitment proceeding under § 6 any psychiatric reports filed under c. 123A are admissible in evidence under § 5. The hearsay aspects of this evidence were discussed in *Commonwealth* v. *McGruder*, 348 Mass. 712. But it does not appear that any such reports were offered. And the question raised in *Commonwealth* v. *McGruder, supra,* as to the admissibility of medical opinions based on such reports, was not raised. The evidence now challenged consists of testimony of the two examining psychiatrists who made the reports on the basis of which these proceedings were instituted and certain testimony of police officers. Some of this evidence was objectionable as hearsay. But no exception was saved to the admission of this evidence. In some instances an objection was made and the evidence was admitted de bene.[1] But thereafter no motion was made to strike this evidence. Where evidence is admitted conditionally it is incumbent upon the objecting party later to move to have it struck; otherwise he has no ground upon which to support his earlier objection. *Commonwealth* v. *Johnson,* 199 Mass. 55, 59. *Alden Bros.* v. *Dunn,* 264 Mass. 355, 362. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 595. *Commonwealth* v. *Beaulieu,* 333 Mass. 640, 650.

None of the objections to evidence now challenged was brought before this court in *Commonwealth* v. *Peterson,* 348 Mass. 702. The sole question there was whether a prisoner serving a sentence for an offence not of a sexual nature could be the subject of proceedings under G. L. c. 123A, § 6.

The petitioner is now seeking in this habeas corpus proceeding to challenge the adjudication because of the admission of hearsay evidence to which no rights were saved. This he may not do. He was represented by experienced counsel and it is not now open to him to relitigate the case

---

[1] At one point in the trial the judge specifically told the petitioner's counsel, "I am going to take this [psychiatrist's testimony]. And I will listen to the results of your cross examination. At that time you may make whatever motion which appears to you to be proper."

on the basis of points not properly raised in the prior proceeding. Where hearsay evidence is admitted without objection it is entitled to its full probative force. *Hubbard* v. *Allyn*, 200 Mass. 166, 171. *Faircloth* v. *Framingham Waste Material Co.* 286 Mass. 320, 325. *O'Kane* v. *Travelers Ins. Co.* 337 Mass. 182, 184.

2. The petitioner argues that the application of G. L. c. 123A has deprived him of the equal protection of the laws. The basis of this argument is that § 6 of c. 123A applies only to persons serving a criminal sentence and does not reach "sexually dangerous" persons who are not under sentence. In other words, the petitioner argues, there is no provision "whereby individuals who may be admittedly 'sexually dangerous' but who are not currently under sentence are subject to the statute." Under § 4 persons who have been convicted of certain sex offences may be proceeded against and adjudicated as sexually dangerous under a commitment procedure identical to that provided in § 6. In cases under § 4 and § 6 persons are proceeded against whose misconduct has brought them under the scrutiny of the Commonwealth and classifications which embrace them are not unreasonable because they do not include others.

In *Baxstrom* v. *Herold*, 383 U. S. 107, on which the petitioner relies, a prisoner serving a criminal sentence was certified insane by a prison physician and transferred to a State institution for the criminally insane. The court held that this procedure which provided for commitment at the expiration of a penal sentence without judicial hearing[2] was an unconstitutional denial of equal protection of the laws because a judicial determination was afforded to all persons committed except those serving a criminal sentence. The vice of the New York statute was that it made an arbitrary classification with respect to persons entitled to a judicial hearing. 383 U. S. 107, 111, 114.

The equal protection clause disapproves only irrational and arbitrary classifications. *McGowan* v. *Maryland*, 366

---

[2] New York provided for jury review in all civil commitment proceedings except in the case of prisoners.

U. S. 420, 426.    The classification of persons "sexually dangerous" was not arbitrary.  *Minnesota ex rel. Pearson* v. *Probate Court of Ramsey County,* 309 U. S. 270.  And as indicated above, those coming within this classification, whether proceeded against under § 4 or § 6, are treated basically the same.  Those sections are both part of a comprehensive scheme dealing with sexually dangerous persons whose conduct has brought them under the observation of the Commonwealth.

3. There is no merit to the petitioner's contention that the statutory definition of "sexually dangerous person" set forth in c. 123A, § 1, is unconstitutionally vague.[3]  See *Commonwealth* v. *Ackers,* 343 Mass. 63, 68–69.  The petitioner attaches great weight to the use of the word "misconduct."  Whereas this word, if standing alone, might suggest that a person was sexually dangerous for almost any act which offended someone's notion of propriety (see *Musser* v. *Utah,* 333 U. S. 95), the statute sets forth clearly its meaning in the subsequent clauses.  The statutory definition requires repetitive or compulsive behavior, violence or aggression by an adult against a person under the age of sixteen and a likelihood that injury will be afflicted. The statute reaches those persons whose behavior has reasonably demonstrated that they are such a danger to society as to require confinement.  The language resembles that approved by the Supreme Court in *Minnesota ex rel. Pearson* v. *Probate Court of Ramsey County,* 309 U. S. 270, 272–274.  See *Sas* v. *Maryland,* 334 F. 2d 506, 514 (4th Cir.)

4. The case is remanded to the county court where the following entry is to be made: Petition dismissed.

*So ordered.*

---

[3] Section 1 provides: "The words 'sexually dangerous person' as used in this chapter shall have the following meaning: — Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires" (as amended through St. 1958, c. 646, § 1).