Leroy J. PETERSON, Petitioner,
Appellant,

v.

Charles W. GAUGHAN, Superintendent, Massachusetts Correctional Institution at Bridgewater, Respondent, Appellee.

No. 7176.

United States Court of Appeals
First Circuit.

Heard Nov. 6, 1968.

Decided Dec. 19, 1968.

John D. O'Reilly, III, Boston, Mass., by appointment of the Court, for appellant.

Willie J. Davis, Asst. Atty. Gen., with whom Elliot L. Richardson, Atty. Gen., and Howard M. Miller, Asst. Atty. Gen., were on brief, for appellee.

Before ALDRICH, Chief Judge, STALEY,* Senior Circuit Judge, and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

Petitioner-appellant appeals from a denial by the U. S. District Court of a habeas corpus petition. Peterson v. Gaughan, 285 F.Supp. 377 (1968). He alleges that his commitment to the Massachusetts Correctional Institute at Bridgewater under M.G.L.A. c. 123A § 6 is unconstitutional.[1]

The instant proceeding represents the latest in a series of challenges petitioner has brought to this commitment. Having been convicted and imprisoned for assault with a dangerous weapon, petitioner was subsequenly found by the Suffolk Superior Court to be a "sexually dangerous person" and ordered for commitment at Bridgewater. He appealed to the Supreme Judicial Court and this finding was affirmed. Commonwealth v. Peterson, 348 Mass. 702, 205 N.E.2d 719 (1965), cert. denied, 384 U.S. 909,

---

* Of the Third Circuit, sitting by designation.

1. Chapter 123A is entitled "Care, Treatment, and Rehabilitation of Sexually Dangerous Persons". Section 1 defines "sexually dangerous person" as

"Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires."

Section 2 directs the establishment of a treatment center for the care of such a person. Sections 3, 4, and 5 deal with procedures for binding over for trial in superior court of a person charged with a sexual offense and for psychiatric examination and commitment of a person convicted of such an offense.

Section 6 applies similar examination and commitment procedures to a prisoner in any jail, house of correction or prison, or in the custody of the youth service board. On request of a proper official, the commissioner of mental health may have the prisoner examined by a psychiatrist. If a psychiatrist reports that the prisoner may be a sexually dangerous person, the superior court may commit the prisoner to the treatment center for a maximum sixty day period of examination by two psychiatrists. If this report clearly indicates that the prisoner is a sexually dangerous person, a petition for commitment is filed, with notice to the prisoner or his family, guardian or next friend. The court may appoint a guardian ad litem and counsel. The prisoner may compel the attendance of witnesses. Evidence of the prisoner's past criminal and psychiatric record, including the above mentioned psychiatric reports, is admissible. If the court finds the prisoner to be a sexually dangerous person, it may commit him to the center for an indeterminate period for the purpose of treatment and rehabilitation. If so committed, the prisoner shall be subject to all restrictions and entitled to all rights and privileges applicable to other inmates in the correctional institution containing the center, so far as compatible with treatment.

Section 9 provides for the prisoner's eligibility for parole to be periodically considered.

86 S.Ct. 1347, 16 L.Ed.2d 361 (1966). He next sought habeas corpus in the federal district court which declined to take jurisdiction in order to allow the Massachusetts courts to reconsider the case in light of Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

The Massachusetts Supreme Judicial Court thereafter dismissed a substantially identical petition for habeas corpus. Peterson, Petitioner, 1968 Mass.Adv.Sh. 517, 236 N.E.2d 82 (Mass.1968). Petitioner then reapplied for federal habeas corpus.

Appellant makes the following contentions: that the statutory definition of a "sexually dangerous person", in M.G.L.A. c. 123A § 1, is unconstitutionally vague; that the provisions of M.G.L.A. c. 123A § 6 constitute a denial of equal protection; and that the court, in accepting hearsay testimony violated appellant's Sixth Amendment right to confront witnesses as applied to the states through the Fourteenth Amendment.

■ In supporting his first contention—that of vagueness—appellant argues that the phrases "misconduct in sexual matters", likely to attack or otherwise inflict injury on the objects of his uncontrolled * * * desires" and "general lack of power to control his sexual impulses", all suffer fatal ambiguity. Each of these phrases in the Massachusetts statute was apparently borrowed almost verbatim from the interpretation placed on the much vaguer Minnesota statute by the supreme court of that state, a gloss accepted by the Supreme Court as adding sufficient definiteness to that statute in Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273, 60 S.Ct. 523, 84 L.Ed. 744 (1940).[2] In both Commonwealth v. Ackers, 343

Mass. 63, 175 N.E.2d 677 (1961) and Peterson, Petitioner, supra, the Supreme Judicial Court of Massachusetts relied on *Minnesota* to affirm the adequacy of the definition of Section 1. We agree.

The equal protection argument proceeds from appellant's observation that one convicted of a non-sexual offense, such as a check forger, who is either given a suspended sentence in state court or is serving time in a federal penitentiary is not subject to the proceedings resulting in indeterminate commitment which are applicable to a check forger serving time in a state penal institution. Appellant invokes Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), and Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) as proscribing a convict non-convict distinction to trigger the application of c. 123A, § 6.

In *Rinaldi*, the Court struck down a statute requiring convicts—but not unsuccessful appellants on probation—to repay the costs of transcripts furnished them in their appeals. In *Baxstrom*, the Court held that a state could not require convicts nearing the end of a prison term to submit to a summary civil commitment procedure while granting all other persons the right to a jury trial.[3] *Baxstrom* is perhaps more easily distinguishable since the legislature had devised a system for civil commitment for nonconvicts, and there was no rational basis for excepting convicts approaching the end of their prison term. Here we have a system which applies only to those convicted of a sexual offense, § 4, and convicts, § 6.

■ We face, therefore, not the specific requirement of nondiscriminatory application within an established class

---

2. That appellant may have wished to persuade us not to follow that authority is understandable; that he did not see fit to cite it is not.

3. In *Skinner* the Court voided a state law which subjected to sterilization convicts who were three-time offenders as

to certain crimes, such as larceny, while exempting those who had been triply convicted of similar offenses, e. g., embezzlement. It did not comment on the uneven application of this law as between those who were incarcerated and those who might be on probation.

but the "requirement of some rationality in the nature of the class singled out." Rinaldi v. Yeager, supra, 384 U.S. at 308–309, 86 S.Ct. at 1499. As the Court indicated in Minnesota ex rel. Pearson v. Probate Court, supra, 309 U.S. at 274–275, 60 S.Ct. at 526, the test is not "Whether the legislature could have gone farther * * * [but whether] [t]he class it did select is identified * * * in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control."

On this point—leaving aside § 4 relating to those specifically convicted of sexual crimes—we cannot say that there is an absence of rational basis. The Supreme Judicial Court of Massachusetts in Peterson, Petitioner, 1968 Mass.Adv. Sh., supra at 523, 236 N.E.2d at 86, referred to both § 4 and § 6 as being part "of a comprehensive scheme dealing with sexually dangerous persons whose conduct has brought them under the observation of the Commonwealth." More recently, in Commonwealth v. Major, 1968 Mass.Adv.Sh. 1173, at 1173–1174, 241 N.E.2d 822, that court has said, with particular reference to § 6: "Prisoners are necessarily under recurrent and close observation by wardens, guards, and rehabilitation personnel. There is thus opportunity to discover sexually deviate behavior or tendencies." In sum, even though persons subject to § 6 have been convicted for other than sexual offenses, they have been found guilty of a serious offense under circumstances where a court has not deemed probation suitable, and their circumscribed existence within an institution subjects them necessarily to some degree of round-the-clock observation without further encroachment on their already limited privacy.

◼ Appellant asserts that there is no rational basis for not including persons serving suspended sentences, former convicts, or citizens subject to some governmental scrutiny such as students attending a state university. These efforts to demolish the line that has been drawn are as capricious as the line is not.[4]

More serious is appellant's contention that reliance on hearsay at his court hearing deprived him of his right to confront witnesses. The statutory procedure, see n. 1, guarantees notice of allegations (including, on request, the psychiatric report), the assistance of counsel, the right to compel the production of witnesses, and a hearing before a judge. Such safeguards were lacking in both Specht v. Patterson, supra, and In re Gault, supra. Appellant asserts, however, that witnesses were improperly allowed to give hearsay testimony.[5]

Our first inquiry goes to the applicability of the right of confrontation. The Commonwealth asserts that hearsay is admissible in such proceedings, citing Commonwealth v. McGruder, 348 Mass. 712, 714–716, 205 N.E.2d 726 (1965), which indeed did hold that the provisions of §§ 4 and 5 "are a very radical departure from the rules of evidence which ordinarily govern." 348 Mass at 715, 205 N.E.2d at 728. The court noted also that since proceedings under chapter 123A are civil, not penal, the right to confrontation is not involved. But since McGruder was decided, Specht v. Patterson, supra, has declared that commit-

---

4. As the court observed in Commonwealth v. Major, supra at 1176, 241 N.E.2d at 824, "Problems as to invasion of privacy and interference with individual liberty would be presented in any legislative attempt to establish procedures for observing, investigating, and acting against suspected persons who are not in custody and have not committed acts subjecting them to prosecution for sexual misconduct."

5. M.G.L.A. c. 123A, § 5 makes admissible the psychiatric report. In the hearing in this case, as the Supreme Judicial Court of Massachusetts noted in Peterson, Petitioner, 1968 Mass.Adv.Sh., supra at 521, 236 N.E.2d at 85, " * * * it does not appear that any such reports were offered."

ment proceedings under the Colorado Sex Offender Act "whether denominated civil or criminal are subject * * * to the Due Process Clause", and that the punishment was "criminal punishment even though it is designed not so much as retribution as it is to keep individuals from inflicting future harm." 386 U.S. at 608–609, 87 S.Ct. at 1211–1212. See also United States ex rel. Gerchman v. Maroney, 355 F.2d 302, 309–310 (3d Cir. 1966). The Court, while adhering to the permitted use of hearsay in a sentencing proceeding under Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), refused to extend it to "this radically different situation". 386 U.S. at 608, 87 S.Ct. 1209.[6]

Even applying the standard applicable to criminal cases, however, we find that appellant did not preserve his rights in respect to the hearsay evidence. At the outset of the hearing, knowing the nature of the evidence relied on by the Commonwealth, appellant's then counsel moved only to dismiss the entire proceeding because appellant was not serving sentences for, nor had been convicted of, sexual offenses, and there was no evidence of sexual misbehavior in prison. Hearsay testimony was then introduced without objection that he had molested two young girls—a necessary item of proof under the statutory definition. Upon counsel's subsequent first objection to a question calling for a hearsay response, government counsel proceeded with a different question. Later, in making two similar objections, the court said it would take the answer *"de bene"*. A final unarticulated objection was made, to which the court said it would accept a psychiatrist's testimony but that counsel could later make any motion he deemed proper.[7] No motion with regard to any hearsay evidence was made, although counsel for appellant did prepare and submit ten requests for rulings.

The Supreme Judicial Court, in reviewing this record, described the Massachusetts practice in these words, "Where evidence is admitted conditionally it is incumbent upon the objecting party later to move to have it struck; otherwise he had no ground upon which to support his earlier objection." Peterson, Petitioner, 1968 Mass.Adv.Sh., supra at 521, 236 N.E.2d at 85. It held that appellant, represented by experienced counsel, had not saved his rights.

■ We are, of course, not foreclosed from examining the adequacy of this holding in relation to appellant's attempt to present a federal question. See Wright v. Georgia, 373 U.S. 284, 289–

6. Other authorities cited by the Commonwealth as legitimizing hearsay are singularly unimpressive. In re Mundy, 97 N.H. 239, 85 A.2d 371 (1952), involved the commitment of sexual psychopaths on the basis of hearsay in certain reports. We suspect that, post-*Specht*, the strong dissent of Judges Duncan and Kenison is now more in accord with the law. Director of Patuxent Institution v. Daniels, 243 Md. 16, 221 A.2d 397 (1966), is also prior to *Specht* and seems to rely heavily on a case upholding the admission into evidence of a certificate attesting to the alcoholic content of blood.

7. This is not to say that, apart from evidence of aggression against a child, there was not substantial non-hearsay testimony. Both psychiatrists testified that they had examined appellant. One had conducted psychiatric testing and reported that this testing revealed in appellant "a fusion of sex and violence". A police officer testified to an incident in which he observed appellant, then masked, in an isolated area at an early morning hour, order a man and woman out of a car, ordered the woman to lie on the ground and the man to put his hands behind his back. The officer then intervened, engaged in a furious scuffle in which one hand was broken, another stabbed, and his head injured by a blow from a rifle wielded by defendant.

On the other hand some of the hearsay was as tenuous as the reported fact that on the day that appellant visited his wife at 80 Washington Avenue in Chelsea, a woman was raped in her apartment at 86 Washington Avenue by a masked man.

291, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963) and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). But we see no reason to disagree with the Massachusetts court on this point. This is not like Douglas v. Alabama, 380 U.S. 415, 420–423, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) where counsel had repeatedly objected and had been flatly overruled, then had moved to exclude a confession, moved for a mistrial and then for a new trial. We cannot say that counsel, to use the language in *Douglas*, had done what he reasonably could have done "to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action." 380 U.S. at 422, 85 S.Ct. at 1078. Under the applicable—and not unreasonable—ground rules, the court had made a tentative ruling, subject to more deliberate action at a later stage at the renewed initiative of counsel.

■ While we view with some concern the extent to which hearsay permeated the testimony as to the involvement of appellant in prior misconduct, the availability to appellant of a motion to strike subsequent to a *de bene* ruling was a known right. The court had made this explicit. When, however, counsel refrained from making such a motion in connection with the other rulings and findings which he requested before decision, he must be held to have intelligently relinquished that right. Cf. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

To hold otherwise would be to invite counsel to guard their rights imperfectly with the hope that inadmissible testimony would give what is erroneously called an anchor to windward in subsequent collateral proceedings.

Affirmed.