UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph W. DOUGHERTY and Terry L.
Conner, Defendants–Appellants.

Nos. 88–1948, 88–1949.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1988.

Decided Feb. 8, 1990.

Mel S. Johnson, Eric Klumb (argued), Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Francis D. Schmitz, Stephen J. Liccione, Asst. U.S. Attys., Milwaukee, Wis., for the U.S.

David P. Lowe (argued), Friebert, Finerty & St. John, Milwaukee, Wis., for Joseph W. Dougherty.

William M. Coffey, David P. Geraghty (argued), Coffey, Coffey & Geraghty, Milwaukee, Wis., for Terry L. Conner.

Before CUDAHY and KANNE, Circuit Judges, and WILL, Senior District Judge.*

KANNE, Circuit Judge.

On Labor Day, 1985, Joseph P. Dougherty and Terry L. Conner ("defendants"), posing as U.S. Marshals, entered the home of Richard Woodcock, the chief executive officer of the Central Bank in West Allis, Wisconsin. Woodcock, his wife, his daughter, and his daughter's boyfriend were present in the house. A short time later, the defendants announced that they intended to rob the Central Bank. To show that they were serious, Conner and Dougherty displayed a hand grenade and an automatic

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

weapon. Later, the Woodcocks and their guest were taken to the basement and held hostage throughout that night. Conner questioned Mr. Woodcock about the bank and access to the vault. He was told that Woodcock had half of the vault combination and another bank officer had the other half.

Early the next morning the hostages were taken to Woodcock's van and driven to the Central Bank. After entering the bank, Mr. Woodcock was told to greet the incoming employees. In the meantime, the other hostages were locked in a storage room inside the bank. As they arrived for work, the bank employees also were locked in the storage room. During this time, a bank maintenance man also observed Dougherty and Conner in possession of hand grenades and guns. When the other bank officer arrived, he was forced to open the vault and to assist Dougherty in taking over half a million dollars in cash and stuffing the money into three large duffle bags. Conner and Dougherty then locked the remaining employees in the storage room and escaped in the bank officer's car.

Sometime later, the defendants and an accomplice were arrested on charges contained in a four-count indictment. Count I charged Conner, Dougherty and the accomplice with armed bank robbery under 18 U.S.C. § 2113; Count II charged Conner and Dougherty with use of firearms during a crime of violence under 18 U.S.C. § 924(c); Count III charged Dougherty and Count IV charged Conner with being a convicted felon in possession of a firearm under 18 U.S.C. § 1202(a)(1).[1]

At trial, to prove that Dougherty had a prior felony conviction the government offered a certified copy of a June 19, 1985 jury verdict from the U.S. District Court for the Western District of Oklahoma. The form of verdict carried the name of the defendant, Joseph W. Dougherty, and a case number. However, the verdict did not set out the specific crime charged but

merely indicated that the named defendant was guilty of "the offense charged in the indictment." The government then offered an uncertified copy of an indictment from the Western District of Oklahoma which carried the same case name and number as the verdict and charged Dougherty with the felony offense of bank robbery. The certified copy of the verdict and the uncertified copy of the indictment were admitted into evidence and formed the basis for Dougherty's conviction on Count III.

In its case-in-chief, the government called a West Allis police officer to testify. On cross-examination, it was revealed that the police had conducted an investigation which produced various reports which were compiled in a single document. Neither the government nor the defendants had previously known of the document. The testimony of the police officer was suspended in order to give counsel an opportunity to review the document. Counsel for both defendants requested a continuance to enable them to interview individuals identified in the document. The requests were denied.

The jury found Dougherty and Conner guilty on all counts[2] and each defendant was sentenced to: a term of life imprisonment on Count I; a concurrent term of life imprisonment, without eligibility for parole, on Counts III and IV; and a consecutive term of five-years imprisonment, without eligibility for parole, on Count II.

On appeal, the defendants challenge their convictions claiming that: (a) the proof was insufficient to convict on Count III, being a convicted felon in possession of a firearm; (b) the district court's denial of their motion for a continuance deprived them of their constitutional rights to a fair trial and to effective assistance of counsel; and (c) the district judge improperly sentenced them. We address each claim in turn.

---

**1.** In addition, the government filed an information against each of the defendants to expose them to the mandatory minimum sentence of fifteen years pursuant to the enhanced penalty provision of 18 U.S.C. § 1202(a)(1).

**2.** *The accomplice pleaded guilty prior to trial.*

## A.

■ Dougherty argues that his conviction on Count III must be overturned because the government failed to submit evidence to prove that he had a prior felony conviction. Specifically, he argues that a prior jury verdict of guilty, absent entry of a judgment thereon by the court, does not constitute a prior conviction under 18 U.S.C. § 1202(a)(1). He also asserts that no competent evidence was introduced to prove the prior jury verdict related to a felony.

To bring this issue into focus, we must examine § 1202(a)(1) which was enacted as part of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968.[3] It provided:

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

.     .     .     .     .

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

It is obvious that § 1202(a)(1) required proof of a prior felony conviction.

Thus, we must first decide whether a jury verdict of guilty amounts to being "convicted by a court" under § 1202(a)(1), even though no formal judgment of conviction was entered on the verdict. We hold that it does.

In *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Supreme Court explored the meaning of the words "convicted by a court" in § 1202(a)(1). The Court held that a prior conviction, which was subject to collateral attack on constitutional grounds because the defendant was without counsel when it was entered, was a conviction under the statute. *Id.* at 65, 100 S.Ct. at 921. In arriving at its decision, the Court made several findings which are instructive here. In reference to § 1202(a)(1), the Court said, "No modifier is present, and nothing suggests any restriction on the scope of the term 'convicted.'" *Id.* at 60, 100 S.Ct. at 918. In examining the legislative history, the Court said Congress intended to create a broad rule and the language of § 1202(a)(1) was termed "sweeping." *Id.* Thus, it is apparent that the phrase "convicted by a court" is not to be given a narrow interpretation.

Subsequently, the Supreme Court decided *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). *Dickerson* involved an interpretation of the language "convicted in any court" in Title IV of the Act, 18 U.S.C. § 922(g)(1) and (h)(1).[4] David Kennison had previously entered a plea of guilty to a state crime, but the state court "deferred" the entry of a formal judgment while Kennison was on probation. After he successfully completed his term of probation, the state court expunged the deferred judgment. The issue was whether Kennison was previously "convicted" so as to invoke the firearm disability of Title IV. *Dickerson* presents a situation analogous to the one before us in which no judgment of conviction was entered. The Court began its analysis by citing the findings of *Lewis* which gave a broad reading to the disability language of Title VII. 460 U.S. at 111, 103 S.Ct. at 991. It also cited the *Lewis* finding that there is "'little significant difference between Title IV and Title VII.'" *Id.* (quoting *Lewis*, 445 U.S. at 64, 100 S.Ct. at 920). The Supreme Court then ad-

---

**3.** The section was repealed by Pub.L. 99–308, § 104(b), effective 180 days after May 19, 1986. The substance of the repealed section was incorporated into various sections of the code.

**4.** Title IV of the Act, as amended by the Gun Control Act of 1968, makes it unlawful for any person "who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to ship, transport or receive any firearm or ammunition in interstate commerce. §§ 922(g) and (h). It also bars a corporation that is controlled by a person disabled by §§ 922(g) and (h) from obtaining a license which is required in order to lawfully engage in the business of importing, manufacturing, or dealing in firearms. These provisions were at issue in *Dickerson*.

dressed what constitutes a "conviction": "'A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. *Like a verdict of a jury it is conclusive.* More is not required; the court has nothing to do but give judgment and sentence.'" *Id.* 460 at 112–13, 103 S.Ct. at 992 (quoting *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)) (emphasis added). Here, a verdict of a jury found Dougherty guilty and the district court had nothing left to do but enter judgment.[5] Under the Supreme Court's broad interpretation of the statutory language and the *Dickerson* analysis, we are compelled to find that the jury verdict of guilty amounts to being "convicted" within the language of § 1202(a)(1). *See also United States v. Locke*, 409 F.Supp. 600, 603 (D.Idaho 1976) (finding the defendant was "convicted" for purposes of § 1202(a)(1) even though judgment on the plea of guilty had been withheld).

■ Next, in connection with § 1202(a)(1), we must determine whether the uncertified copy of the indictment was properly admitted into evidence to show that the prior jury verdict related to a felony. Dougherty objected when the government offered the uncertified copy of the indictment. The district court conditionally admitted it "subject to it being certified." A certified copy of the indictment was never substituted by the government for the uncertified copy. However, Dougherty did not move to strike or otherwise renew his objection. We hold that by failing to renew the objection to the conditional admission, Dougherty waived review of the issue of the admissibility of the uncertified indictment. *See United States v. Gilbreath*, 445 F.2d 810, 810–11 (10th Cir.) (per curiam), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971); *United States v. Page*, 277 F.2d 3, 5 (2d Cir.) (per curiam), *cert. denied*, 364 U.S. 843, 81 S.Ct. 83, 5 L.Ed.2d 67 (1960); *Anglo Cal. Nat'l. Bank v. Lazard*, 106 F.2d 693, 705–06 (9th Cir.), *cert. denied*, 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521 (1939); *Franano v. United States*, 277 F.2d 511, 516 (8th Cir.), *cert. denied*, 364 U.S. 828, 81 S.Ct. 68, 5 L.Ed.2d 57, *reh'g denied*, 364 U.S. 906, 81 S.Ct. 231, 5 L.Ed.2d 199 (1960).[6]

■ If a condition attached to the admission of evidence is not satisfied by the offering party, the burden properly rests with the objecting party to renew the objection. Such a practice affords the trial judge an opportunity to ensure that the evidentiary record is complete and to give proper consideration to any defects or omissions in proof. The First Circuit expressed its concern in this area in *Peterson v. Gaughan*, 404 F.2d 1375 (1st Cir.1968). In the state trial court, hearsay evidence was conditionally admitted over an objection. The condition was not subsequently fulfilled and the objecting party did not renew the objection nor move to strike. In its habeas corpus decision the First Circuit held that by failing to move to strike, the party did not preserve his rights. "To hold otherwise would be to invite counsel to guard their rights imperfectly with the hope that inadmissible testimony would give what is erroneously called an anchor to windward in subsequent collateral pro-

---

5. There were statements made to Judge Reynolds by the Assistant United States Attorney, as well as by Dougherty's counsel, indicating that the reason a formal judgment was not entered on the verdict in the Western District of Oklahoma was that Dougherty had escaped custody and was tried in absentia.

6. *See also* Annotation, *Necessity and Sufficiency of Renewal of Objection to, or Offer of, Evidence Admitted or Excluded Conditionally*, 88 A.L.R.2d 12 (1963). The general rule, as discerned from the cases, is stated as follows:

Where evidence has been conditionally, provisionally, or tentatively admitted or received over objection, it ordinarily is incumbent upon the objecting party to renew his objection to such evidence in some positive way, as by moving to strike it, when it appears, later in the trial, that the condition has not been satisfied or that the evidence otherwise remains inadmissible for the reason originally advanced, and if he fails to so renew his attack on such evidence and it remains in the case, his objection thereto will be regarded as waived and ordinarily will not be entitled to consideration on appeal.

*Id.* at 23–24.

ceedings." *Id.* at 1380. Similarly, we believe that it would be improper to encourage counsel to make tactical decisions to withhold the renewal of evidentiary objections with an eye toward direct appellate review.

The Tenth Circuit, in *Gilbreath*, faced a situation similar to ours. In that case evidence was conditionally admitted over a relevancy objection subject to later being "connected up." The subsequent connection was not made, but the objection was not renewed nor was a motion to strike made. The Tenth Circuit quoted the following "rule" by Professor McCormick:

> In a long trial, ... where the witnesses are many and the facts complex, it is easy for the offering counsel to forget the need for making the required 'connecting' proof, and for the judge and the adversary to fail to observe this gap in the evidence. Who invokes the condition subsequent, upon such breach? The burden is placed upon the objecting party to renew the objection and invoke the condition. By the majority view this is to be done by a motion to strike out the evidence conditionally received, when the failure of condition becomes apparent. It seems that it does become apparent when the offering party completes the particular stage of his case in which the evidence was offered, and that when he 'rests' without making the missing proof, the adversary should then move to strike, failing which, he cannot later claim as of right to invoke the condition.... McCormick, Evidence, § 58 (1954).

445 F.2d at 811.

The admission of the uncertified copy of the indictment without fulfillment of the condition of substituting a certified copy was not plain error.[7] Absent a renewed objection upon the government's failure to submit a certified copy, the jury properly considered the uncertified indictment in determining that Dougherty's prior conviction was a felony. Thus, Dougherty's conviction in Count III is affirmed.[8]

### B.

■ Dougherty and Conner claim that the district court deprived them of a fair trial and effective assistance of counsel by denying their motion for a continuance after the trial had commenced. The purpose of the requested continuance was to enable counsel for the defendants to conduct interviews with individuals whose statements were contained in a document prepared by the West Allis Police Department and referred to during cross-examination of a government witness. As we noted earlier, neither the government nor the defendants had previously known of the document. Testimony of the witness was interrupted to give counsel an opportunity to review the document. The government offered to stipulate that the document contained the statements made by certain individuals to the local police department. The district judge reviewed the content of the document and found that the information it contained lacked any relevance or probative value. The judge also found that calling the police officers who took the statements included in the document would not impeach any prior testimony, and invited the defendants to recall any witnesses whom they wished to re-examine.

The defendants claim that the document contained inconsistent statements by

---

7. In the case before us, the copy of the indictment might have been admissible even though not self-authenticated by certification under Federal Rule of Evidence 902. The district court did not have the opportunity to make this determination because Dougherty failed to move to strike. Because we decide that the issue of admissibility was waived, we need not address the admissibility of the uncertified indictment on other grounds.

8. Conner also argues that his conviction on Count IV should be reversed because the government failed to prove his prior conviction was a felony. However, the record reveals that there was sufficient evidence before the jury for it to know that 18 U.S.C. § 2113 is the federal bank robbery statute and the jury knew that Conner previously had been convicted under § 2113. The district judge instructed the jury that bank robbery is a felony. Thus, the jury was properly able to conclude that Conner had been previously convicted of a felony and his conviction on Count IV is affirmed.

government witnesses who had already testified. However, Dougherty and Conner point to no statements in the document to support this allegation.

On review, we will not overturn the decision of the district court regarding its disposition of a request for a continuance unless that decision amounts to an abuse of discretion. *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940); *United States v. Manos*, 848 F.2d 1427, 1429 (7th Cir.1988); *United States v. Zambrana*, 841 F.2d 1320, 1326–27 (7th Cir.1988). We find that the district court judge properly exercised his discretion in denying the continuance and such denial did not prejudice either defendant.

### C.

■ Finally, the defendants argue that their sentences on Counts III and IV of life imprisonment, without possibility of parole, amount to an abuse of discretion and should be overturned. For sentences, such as these, imposed prior to the implementation of the Sentencing Guidelines, our standard of review is extremely limited. *Dorszynski v. United States*, 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974). Indeed, we will not disturb such a sentence imposed within statutory limits unless the trial court, in exercising its discretion, relied on improper or unreliable information or did not exercise any discretion at all. *United States v. Schmidt*, 760 F.2d 828, 833 (7th Cir.), *cert. denied*, 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985).

■ The defendants claim that the district judge committed an abuse of discretion when, at sentencing, he remarked that a career bank robber should not be locked up until his death, yet thereafter sentenced the defendants to terms of life imprisonment without possibility of parole. However, the record at sentencing reflects that the district judge thoroughly considered all of the relevant factors before him. On several occasions, he remarked about the extreme seriousness of the nature of the offenses committed by defendants and that the robbery was committed after the defendants had escaped from custody while serving sentences for similar convictions. The sentences were correctly imposed within statutory limits and we will not disturb them merely because the sentencing judge expressed a personal view at odds with the outcome mandated by the application of the statutory scheme.

■ The defendants also challenge their sentences on Counts III and IV on the grounds that the government did not charge three prior felony robbery convictions and did not prove them before the jury. The Omnibus Crime Control and Safe Streets Act of 1968 was amended by the Armed Career Criminal Act of 1984 which added, at the end of § 1202(a), the following language:

> In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

Essentially, the defendants argue that three prior convictions are an element of § 1202(a)(1) and must be charged in the indictment and proven to a jury. This argument is made despite our decisions in *United States v. Pirovolos*, 844 F.2d 415, 420 (7th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988), and *United States v. Karlin*, 852 F.2d 968, 972 (7th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989), which held that only one prior felony conviction is an element of the offense and the additional robbery or burglary offenses merely provide for sentence enhancement. There had been a conflict among the circuits on this issue, but as we recently noted, the conflict has "ironed itself out."

*United States v. Dombrowski,* 877 F.2d 520, 522 n. 5 (7th Cir.1989). We decline to create a new conflict and reconfirm our position set forth in *Pirovolos,* that only one prior felony conviction is an element of § 1202(a)(1). Therefore, the additional convictions were relevant only for sentencing and were properly presented to the district court. We find that the district court did not abuse its discretion in sentencing the defendants.

For the reasons discussed above, the convictions of Conner and Dougherty and the sentences imposed thereon are AFFIRMED.