UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymond GWIAZDZINSKI,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Steven DREYER, Defendant–Appellant.

Nos. 97–1278, 97–1290.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1998.

Decided April 14, 1998.

Brian P. Netols, Office of the United States Attorney, Criminal Division, Chicago, IL, Mark S. Hersh (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Gerardo S. Gutierrez (argued), Chicago, IL, for Defendant–Appellant Gwiazdzinski.

Frederick F. Cohn (argued), Chicago, IL, for Defendant–Appellant Dreyer.

Before MANION, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

Raymond Gwiazdzinski and Steven Dreyer pled guilty to money laundering. They appeal contesting the voluntariness of their pleas and raising sentencing issues. We affirm the decisions of the district court except for its imposition of Dreyer's sentence, which we remand for a small correction.

## I. HISTORY

An undercover agent posed as someone wanting to launder drug proceeds. On August 18, 1993, he learned from unknown Person A that Gwiazdzinski, a Chicago lawyer, could launder the proceeds for him. Person A told the agent to call Gwiazdzinski at his law office and gave him a code to use. Person A then contacted Gwiazdzinski and told him to expect the call.

The same day, the agent called Gwiazdzinski and explicitly told him that he needed to launder large amounts of cash from drug trafficking. Gwiazdzinski told the agent he was an attorney and a real estate broker and he had the experience, skills, and connections to launder the funds. Gwiazdzinski told the agent his fee for laundering was between five and ten percent of the laundered amount.

On October 25, 1993, Gwiazdzinski and the agent met to discuss the laundering. Gwiazdzinski suggested laundering the cash through investments, such as Eurodollars, real estate, or offshore accounts. When the agent explained that he was not interested in laundering the money through investments, Gwiazdzinski assured him he could simply convert the cash into negotiable instruments.

After several telephone conversations, the two agreed on December 3 that Gwiazdzinski would launder $50,000 to $75,000 for a fee of ten percent. On December 14, the agent met Gwiazdzinski in his law office and gave him approximately $75,000 plus a fee of $7,000. Later that day, Gwiazdzinski gave about half of that amount to unnamed Person B to "smurf," or convert into amounts less than $10,000. (Cash transactions of more than $10,000 trigger a financial institution's duty to file a Currency Transaction Report with the Internal Revenue Service.) Person B recruited Dreyer to assist. Together they purchased seven money orders from currency exchanges. Person B, unnamed Person C, and Gwiazdzinski purchased cashier's checks, some drawn on Gwiazdzinski's escrow account for client funds. On December 16, Gwiazdzinski delivered $75,000 worth of negotiable instruments to the agent.

On January 5, 1994, Gwiazdzinski contacted the agent to solicit more business from him. The agent said he had more drug proceeds to launder, so on January 12, Gwiazdzinski, Dreyer, Person B, and the agent met at Gwiazdzinski's law office. The agent handed over another $75,000 in cash plus another $7,000 fee. At this meeting, Dreyer told the agent that he helped Gwiazdzinski launder funds and that he would deliver negotiable instruments to the agent.

They laundered the funds using techniques similar to those described above.

On February 7, 1994, Gwiazdzinski called the agent and asked again whether the agent had any new business for him. Dreyer also participated in this conversation, calling himself Gwiazdzinski's partner. Gwiazdzinski and Dreyer each had several conversations with the agent over the next few months, trying to drum up business. On October 5, 1994, Dreyer and the agent agreed to meet. On October 6, Dreyer met with the agent and accepted $80,000 in cash plus a $4,800 fee. The agent specifically represented the money as drug proceeds. Dreyer laundered the proceeds much as before, and he gave 40% of the fee to Gwiazdzinski.

The grand jury indicted Gwiazdzinski and Dreyer on multiple counts of money laundering in violation of 18 U.S.C. § 1956. Each pled guilty to one count. Before sentencing, Gwiazdzinski filed a motion pursuant to Fed. R.Crim.P. 32(e) seeking to withdraw his plea. The district court denied the motion. Overruling several sentencing objections by Gwiazdzinski, the district court sentenced him to 121 months' imprisonment and a $10,000 fine. He appeals.

Dreyer also pled guilty and was released on bond to return on his own recognizance. The Government learned that Dreyer committed additional offenses during his release. He also failed to appear for a court date. He was rearrested, and he entered into a new plea agreement. Dreyer then obtained new counsel. The court continued sentencing to allow new counsel time to prepare. The court denied a second continuance to allow Dreyer time to be examined by a psychiatrist. Dreyer moved to vacate his plea based on ineffective assistance of his former counsel. The court denied this motion. Dreyer was sentenced to 120 months' imprisonment. He appeals.

## II. ANALYSIS

### A. Defendant Gwiazdzinski

#### 1. Pro Se Brief

■ Gwiazdzinski was represented by counsel in his appeal. His attorney filed a brief on his behalf on June 11, 1997. The Clerk of the Court set oral argument for January 7, 1998. On December 31, 1997, Gwiazdzinski filed a pro se Motion to Dismiss Indictment and a supporting brief raising issues not addressed by his attorney in the original brief. The Government did not have time to respond in writing to Gwiazdzinski's pro se brief before oral argument, but the Assistant United States Attorney argued primarily that Gwiazdzinski may not file a pro se brief when he is represented by counsel.

■ A defendant does not have an affirmative right to submit a pro se brief when represented by counsel. *See Hayes v. Hawes*, 921 F.2d 100, 102 (7th Cir.1990) (per curium). In the absence of such a right, we decline to accept Gwiazdzinski's pro se motion or brief. The motion and brief are stricken as improperly before the Court.

#### 2. Withdrawal of Guilty Plea

■ Gwiazdzinski seeks to withdraw his guilty plea. He pled guilty to one count of money laundering, and at the Rule 11 hearing he averred that no one coerced him into doing so. However, he claims now that his wife coerced him into pleading guilty by threatening not to let him see their child unless he pled guilty. He submitted a psychiatric evaluation in support of his assertion that he was not in the right frame of mind to plead guilty. While he told his probation officer during the presentence investigation that he drank heavily the night before pleading guilty (thereby impacting his judgment at sentencing), his lawyers said at sentencing that he did not drink the night before he pled guilty. The district court denied his motion to withdraw his sentence. We usually review that decision for abuse of discretion. *See United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir.1995). But when a defendant contradicts his own testimony given at the Rule 11 hearing, we accord the district court's decision "great weight" and we will not reverse unless the district court's decision was clearly erroneous. *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987).

■ The Federal Rules of Criminal Procedure provide that "the court may permit the plea to be withdrawn if the defendant shows

any fair and just reason." Fed.R.Crim.P. 32(e). Of course, coercion is a "fair and just reason" to withdraw a plea since a coerced plea is not voluntary. But the defendant who has already testified in his Rule 11 hearing that his plea was not coerced "faces a heavy burden of persuasion." *Ellison*, 835 F.2d at 693. The purpose of the Rule 11 colloquy is to expose coercion, and the district judge must be able to rely on the defendant's sworn testimony at that hearing. "We will not force an attitude of skepticism on district judges which would eliminate the presumption of truthfulness expected from responses given under oath." *Id.*

Here, Gwiazdzinski has directly contradicted his assertion at the Rule 11 hearing that his plea was completely voluntary.[1] First, he asserts his wife was threatening not to let him see their child unless he pled guilty. Even if we thought this type of pressure could render a plea involuntary, we cannot say that the district court's finding otherwise was clearly erroneous. Many defendants face pressure from family members to make certain decisions when facing criminal charges. Gwiazdzinski has not persuaded us that the pressure was so overwhelming that he pled guilty involuntarily, and so we do not disturb the district court's decision.

■ Gwiazdzinski also submitted a two-year-old psychiatric evaluation in support of his contention that his plea was not voluntary. The district court read the evaluation and decided it had no impact on Gwiazdzinski's ability to make a voluntary plea. Gwiazdzinski has merely referred to the report without providing us any reason to call the district court's finding clearly erroneous. Therefore, we will not disturb that finding.

■ Finally, Gwiazdzinski asserts that he drank heavily the night before pleading guilty, which affected the voluntariness of his plea. However, at his Rule 11 hearing his lawyers told the district court that he had not been drinking. In light of the conflicting statements regarding Gwiazdzinski's drinking the night before he pled guilty, we cannot possibly say that the district court's decision not to let Gwiazdzinski withdraw his plea was incorrect for that reason. We find the district court's decision was not clearly erroneous.

### 3. Enhancement for Laundering over $200,000

■ The district court enhanced Gwiazdzinski's sentence by two levels under United States Sentencing Commission, Guidelines Manual ("U.S.S.G.") § 2S1.1(b)(2)(C) for laundering funds exceeding $200,000 in value. Gwiazdzinski argues the enhancement was unwarranted. He admits to personally laundering $150,000, but he argues that the record does not support a finding that he could have reasonably foreseen that Dreyer would launder the last $80,000. We review sentencing determinations for clear error, a most deferential standard. *See United States v. House*, 110 F.3d 1281, 1283 (7th Cir.), *cert. denied sub nom. Hughes v. United States*, ── U.S. ──, 118 S.Ct. 199, 139 L.Ed.2d 136 (1997).

The district court found that Gwiazdzinski could have reasonably foreseen that Dreyer would launder the last $80,000. Gwiazdzinski was held responsible for the funds because Dreyer's act was one of the "reasonably foreseeable acts or omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The district court based this finding on the plea agreement, where Gwiazdzinski agreed to be responsible for a total of $230,000. The recitation of facts in the plea agreement refers to Dreyer's statement that he and Gwiazdzinski

---

1. Part of that colloquy went as follows:

THE COURT: Now, has anyone in any way, shape or form forced you in any way to plead guilty?
DEFENDANT GWIAZDZINSKI: No.
THE COURT: Has anyone threatened you in any way to cause you to plead guilty?
DEFENDANT GWIAZDZINSKI: No.
THE COURT: And apart from this written plea agreement, have any promises been made to you to cause you to plead guilty? DEFENDANT GWIAZDZINSKI: No.
THE COURT: Is your decision to plead guilty entirely voluntary?
DEFENDANT GWIAZDZINSKI: Yes.
Transcript of proceedings at 25–26, United States v. Gwiazdzinski, 96 CR 65–1 (N.D.Ill. Sept. 5, 1996).

were still working together when Dreyer laundered the last $80,000. The recitation of facts also says that Dreyer told Gwiazdzinski about this transaction, that Dreyer told the undercover agent that he and Gwiazdzinski were still working together, and that he and Gwiazdzinski split the fee for Dreyer's services on that transaction.

Gwiazdzinski contends that he and the Government had some disagreement at his Rule 11 hearing regarding these specific facts. However, the district court specifically asked Gwiazdzinski whether he agreed to a summary of facts in paragraph 6 of his plea agreement. Gwiazdzinski said he did. Paragraph 6 describes laundering $230,000. Even if some disagreement about specifics lingers today, we cannot say that the district court committed clear error in relying on Gwiazdzinski's agreed-to rendition of facts.

### 4. Enhancement for Being a Manager or Supervisor

The district court enhanced Gwiazdzinski's sentence by two levels for his role in the offense under U.S.S.G. § 3B1.1(c). That section of the Guidelines allows a two-level enhancement for being an "organizer, leader, manager or supervisor." U.S.S.G. § 3B1.1(c). We review the enhancement for clear error. *See House*, 110 F.3d at 1283.

The district court found that Gwiazdzinski directed Dreyer as well as Persons B, C, and D. The district court came to this conclusion after reading the Presentence Investigation Report, hearing oral arguments from Gwiazdzinski's counsel and the Assistant United States Attorney, and listening to a taped conversation between Gwiazdzinski and an undercover agent. Gwiazdzinski now argues first that the district court could not find that Gwiazdzinski "managed" Persons B, C, and D because, as they remained unnamed persons, the court had no basis on which to decide that they were "criminally responsible" as the Guidelines require. *See* U.S.S.G. § 3B1.1, comment. (n.1); *see also United States v. Stevenson*, 6 F.3d 1262, 1269–70 (7th Cir.1993). Second, he argues that the district court clearly erred in finding that he directed Dreyer when they were actually coequal participants in the venture.

We need not address Gwiazdzinski's argument that Persons B, C, and D were not proven to be criminally responsible because the two-level enhancement the district court gave only requires that Gwiazdzinski direct one person, and that one person could be Dreyer.

Gwiazdzinski asserts that he never directed Dreyer, that they were equals. However, again in his plea agreement he states that Dreyer converted cash into checks "acting on instructions from defendant GWIAZDZINSKI." Gwiazdzinski Plea Agreement at 13. On the tape played at the sentencing hearing, Gwiazdzinski also said things to the undercover agent like, "I'm in full control," and "Ray [Gwiazdzinski] keeps control of his deals." Government's Exh. 1. In light of the plea agreement and the taped conversation, we cannot say that the district court plainly erred in enhancing Gwiazdzinski's sentence by two levels.

### B. Defendant Dreyer
#### 1. Ineffective Assistance of Counsel

Dreyer pled guilty to money laundering on his counsel's advice that his sentencing level would be 28. His counsel failed to take into account the possibility of a two-level enhancement for obstruction of justice, arising from the fact that Dreyer jumped bond. Dreyer asserts that he would not have pled guilty had he known his sentencing level would be 30 rather than 28.

Normally we do not review claims made for the first time on appeal. We make an exception, though, where as here the appellant argues that his trial counsel was ineffective and the appellant has new counsel on appeal. *See United States v. Barnes*, 83 F.3d 934, 939 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996). Dreyer elected not to pursue collateral relief through 28 U.S.C. § 2255 (the preferred course) but to stand on the trial record as is. The trial record is sufficiently developed to allow us to decide Dreyer's claim, so we will address it.

Of course, defense counsel in a criminal case must perform as a reasonably competent attorney. *See Strickland v.*

*Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). A defendant who desires to withdraw his plea because counsel rendered ineffective assistance must show that advice he received "was not within the range of competence demanded of attorneys in criminal cases" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." *United States v. Malave*, 22 F.3d 145, 147 (7th Cir.1994) (citations and quotation marks omitted). Competence, in this situation, requires that defense counsel (1) "learn all the facts of the case and ... make an estimate of a likely sentence"; (2) "communicate the results of his analysis of the case" to the defendant; and (3) "the scrutiny must be undertaken in good faith." *Barnes*, 83 F.3d at 939. "[T]he attorney's analysis need not provide a precisely accurate prediction" of the sentence, *id.*, but failure "to provide good-faith advice about the sentencing consequences of a guilty plea" can show deficient performance, *id.* at 940.

Dreyer has shown only that his trial counsel did not accurately predict his sentencing level. He relies heavily on his characterization of his trial counsel as "experienced and highly regarded lawyers" who should have accurately predicted his enhancement for obstruction of justice. However, Dreyer has not shown that trial counsel's scrutiny was not undertaken in good faith. He has identified nothing in the record (or outside the record) which suggests that trial counsel was not acting in good faith. We cannot say based on Dreyer's complaint of inaccuracy that he received ineffective assistance of counsel. We decline to set aside his guilty plea.

### 2. Denial of Continuance

■ Five days before his sentencing, Dreyer requested a continuance so he could be examined by a psychiatrist. He was trying to demonstrate reduced mental capacity in order to qualify for the sentencing reduction in U.S.S.G. § 5K2.13. Defense counsel apologized for the late date of the request, citing his wife's recent severe illness. The district court denied the continuance saying that nothing would be gained by a psychiatric evaluation. We review that decision for abuse of discretion. *See United States v. Hall*, 35 F.3d 310, 315 (7th Cir.1994). "This case-by-case determination is made in light of the circumstances presented, particularly the reasons presented to the district court in support of the continuance at the time the motion is denied." *United States v. Knorr*, 942 F.2d 1217, 1221 (7th Cir.1991); *see also United States v. Hall*, 35 F.3d 310, 315 (7th Cir.1994) (holding that denial for continuance not abuse of discretion when granting one would have little impact on defendant's position); *United States v. Dougherty*, 895 F.2d 399, 405 (7th Cir.1990) (same).

In his motion for a continuance, Dreyer quoted from the Presentence Investigation Report that in 1992, "his business failed, he had a nervous breakdown, and 'went away' for a year." Motion to Have Defendant Examined by a Psychiatrist, *United States v. Dreyer*, No. 96 CR 65–2 (N.D.Ill. Jan. 24, 1997). Also quoting the Presentence Investigation Report, he says that his mother "believes that defendant had 'a form of depression.'" *Id.* He also told the court he had a history of "heavy use of alcohol and drugs" which might be indicative of mental illness. *Id.* In denying the motion, the district court noted orally that to warrant a reduction in sentence Dreyer would have to show that his mental disorder significantly reduced his mental capacity or contributed to the offense, citing *United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir.1992) (interpreting U.S.S.G. § 5K2.13), and that he did not believe that could be proved based on the assertions in the motion for a continuance.

■ The district court was able to observe Dreyer during the various proceedings, and we are very hesitant to second-guess his determination that a psychiatric evaluation would not be useful. Nor are we overwhelmed at the nature of Dreyer's allegations regarding his mental illness. Depression and a past nervous breakdown are not trivial conditions, but they do not strike us as so infecting Dreyer's actions that we firmly believe the district court erred. Of course, a psychiatric evaluation could well turn up hidden disorders not even averred to in the

motion for a continuance, but "[t]he mere possibility that some additional evidence would be obtained ... is insufficient to overcome our deference to the district judge in this area." *Knorr*, 942 F.2d at 1222. We find no abuse of discretion in the district court's decision to deny a continuance.

### 3. Illegal Sentence

Dreyer raises the point that his sentence is illegal in that the district court sentenced him to 60 months on Count One and an additional 60[2] months on the "stipulated offenses" to run consecutively. The stipulated offenses are the offenses that Dreyer stipulated to in the Presentence Investigation Report for purposes of sentencing—he has not pled guilty to them. The district court did not indicate that it intended a downward departure for Count One. The United States agrees that Dreyer was improperly sentenced to 60 months on the stipulated offenses—the entire 120 months should have been attributed to Count One. While this is most likely the case, we cannot know exactly what the district court's intentions were. We remand this case to the district court for resentencing consistent with the Guidelines.

For the foregoing reasons we STRIKE Gwiazdzinski's pro se motion and brief; we VACATE Dreyer's sentence and REMAND Dreyer's cause for the limited purpose of resentencing in accordance with this opinion; and we otherwise AFFIRM the decisions of the district court.

---

**2.** The judgment described Dreyer's conviction as "60 months as to Count One and 61 months on the Stipulated Offenses, to run consecutively." Judgment, *United States v. Dreyer*, No. 96 CR 65–2 (N.D.Ill. Feb. 3, 1997). The court orally sentenced Dreyer to "60 months on count one and 60 months on the stipulated offenses to run con-secutive ... for a total period of 10 years." Transcript of Proceedings at 21, *United States v. Dreyer*, No. 96 CR 65–2 (N.D.Ill. Jan. 29, 1997). We suspect that the Judgment contains a typographical error in sentencing Dreyer to 61 months rather than 60 months. The district court can correct the discrepancy on remand.