**Steven COX**

v.

**UNITED STATES of America**

No. CIV. L–99–1103.

United States District Court, D. Maryland.

March 24, 2005.

Steven Cox, Elkton, OH, pro se.

*MEMORANDUM*

LEGG, Chief Judge.

Pending is Steven Cox's ("Cox") 28 U.S.C. § 2255 Motion. Cox alleges that he received ineffective assistance of counsel. The Court held a hearing on Cox's motion and the parties submitted supplemental briefs. For the reasons stated below, the Court will, by separate Order, deny Cox's motion.

## I. BACKGROUND

### A. Cox's Arrest

In the late summer of 1992, Prince Ankrah ("Ankrah") and Darrell Bond ("Bond"), two Baltimore wholesale drug customers of Emmanuel Umegbolu ("Umegbolu"), refused to pay for heroin Umebgolu had supplied to them on consignment. In September 1992, Umegbolu ordered Ankrah and Bond robbed and killed to send a cautionary message to his other customers.

On September 14, 1992, Cox, an enforcer for Umegbolu, held a meeting at his record store in the Bronx with Calvin Deair ("Deair") and Floyd Sinclair ("Sinclair") to plan a trip to Baltimore. Cox decided it would be safest to transport the guns separately. The next day, Deair and Sinclair approached Bernard Christian ("Christian"), who agreed to carry two 9–mm semiautomatic pistols to Baltimore.

On September 16, 1992, Christian arrived by train in Baltimore. At the Baltimore station, Detective Gary Cover of the Baltimore City Police Department requested permission to search the bag Christian was carrying. Christian consented. Detective Cover searched the bag and found the two pistols. Christian promptly agreed to cooperate. Police placed Christian in Room 825 of the Days Inn, which was wired with video and audio transmitters.

Cox, Deair, Sinclair and Mario Martinez ("Martinez") arrived in Baltimore during the early morning hours of September 17, 1992. After renting a white van at BWI Airport, they went to the Days Inn. Cox and Martinez went up to Room 825 to meet with Christian while Sinclair slept in the van. Videotape showed Martinez inspecting the guns. Audiotape recorded Christian discussing killing Bond. Later that morning, Cox, Martinez, Deair and Sinclair left the Days Inn to meet Thomas Faulkner ("Faulkner"), a local drug dealer

who bought from Umegbolu. Faulkner's assignment was to point out Ankrah and Bond. The five men drove around but were unable to locate either Ankrah or Bond. The men went to the Welcome Inn where Faulkner registered a room in his name. Martinez and Faulkner then returned to the Days Inn to pick up Christian.

Martinez, Faulkner and Christian were arrested as they attempted to leave the Days Inn. Cox, Sinclair, and Deair were later arrested at the Welcome Inn.

### B. A Grand Jury Indicts Cox

In September 1992, a grand jury returned an indictment against Cox, Martinez, Sinclair, Umegbolu, Faulkner and Deair. Cox retained William H. Murphy, Jr., a highly experienced criminal defense attorney. Between September 1992 and June 1993, a grand jury returned two superseding indictments. The third superseding indictment charged Cox with:

Count III    Conspiracy to Travel in Interstate Commerce with Intent to Commit a Murder for Hire;

Count IV    Travel in Interstate Commerce to Commit a Murder for Hire;

Count V    Use of a Taurus 9–mm Semiautomatic Pistol and a Smith & Wesson 9–mm Semiautomatic Pistol in Connection with the Crimes Charged in Counts

III and IV (hereinafter referred to as "924(c) charge" or "924(c) conviction");

Count VI    Conspiracy to Commit a Violent Act in Aid of a Racketeering Activity;

Count VII    Commission of a Violent Act in Aid of a Racketeering Activity;

Count VIII    Use of a Taurus 9–mm Semiautomatic Pistol and a Smith & Wesson 9–mm Semiautomatic Pistol in Connection with the Crimes Charged in Counts VI and VII (hereinafter referred to as "second 924(c) charge" or "second 924(c) conviction").

Former United States Attorney Thomas DiBagio ("DiBagio"), who was then an Assistant United States Attorney, prosecuted the case.

### C. The Government's Plea Offer Before Trial

On July 13, 1993, shortly before a motions hearing, DiBagio met informally outside the courtroom with counsel for the three defendants who were proceeding to trial:[1] Murphy, Gary Ticknor ("Ticknor") (counsel for Martinez) and Stanley Needleman ("Needleman") (counsel for Sinclair).[2] (Gov't Mem. Opp. M. to Withdraw at 2.) DiBagio extended an identical plea offer to all three attorneys.[3] (*Id.* at 3.) DiBagio

---

1. Faulkner and Deair pled guilty. Umegbolu did not stand trial with his co-defendants because he was serving a sentence in Canada. Umegbolu was eventually deported to the United States, where he pled guilty to Count I of the Fourth Superseding Indictment.

2. There is inconsistent evidence in the record about whether this was the only plea discussion between DiBagio and Murphy. On direct-examination, Murphy testified that he only had one plea discussion. (R. at 744.) On cross-examination, however, Murphy stated that he had two conversations with DiBagio about a plea deal. (*Id.* at 768.) The

Court need not resolve this factual discrepancy because: (i) the July 1993 plea offer is the subject of Cox's § 2255 Motion, and (ii) there is no other evidence in the record about a possible earlier plea discussion.

3. The terms of the plea offer, as applied to Cox, were as follows:

   (i) Cox would plead guilty to Counts III, IV and V;

   (ii) the maximum sentence for Count III was five years;

   (iii) the maximum sentence for Count IV was ten years;

told defense counsel that if their clients entered into the plea agreement, the likely sentence would be in the range of 144 months. (Agreed Statement Facts ¶ 3.) He also opined that if the defendants were convicted following a trial the likely sentence would be in the range of 180 months. (*Id.*)

The defense attorneys met with their clients jointly in the courtroom, where Murphy summarized the offer to all three defendants. (R. at 748.) He explained that the maximum sentence each faced was 180 months, and that accepting the plea offer would reduce the sentence to approximately 144 months.[4] (Agreed Statement Facts ¶ 7.) At that time, Murphy had not himself reviewed the United States Sentencing Guidelines ("the Guidelines") to determine the maximum sentence Cox might receive if convicted at trial. (R. at 748.) Ticknor had, however, made his own Guideline calculations, and voiced his agreement that

> (iv) the mandatory sentence for the 924(c) charge (Count V) was five years consecutive without parole;
> (v) pursuant to § 2E1.4 the base offense level for Counts III and IV was 32;
> (vi) if Cox testified against his co-defendants, the Government would move under § 5K1.1 for a 3 level departure for his substantial assistance;
> (vii) the Government would move for a 3 level downward adjustment based on Cox's acceptance of responsibility;
> (viii) the Government would dismiss Counts VI, VII and VIII at sentencing;
> (ix) there was no agreement as to Cox's criminal history;
> (x) the district court was not bound by the agreement.

(Gov't Mem. Opp. M. to Withdraw at 2.) The parties' Agreed Statement of Facts states that the Government, pursuant to the plea offer, would have recommended to the Court a two-level downward adjustment for acceptance of responsibility. (Agreed Statement Facts ¶ 2.) In 1995, the sentencing judge was authorized to make a two or three level downward adjustment.

4. At the Sentencing Hearing held on April 14, 1995, Murphy and Cox testified that the plea

the maximum sentence each defendant faced under the third superseding indictment was 180 months.[5] (*Id.* at ¶ 6; Ticknor Aff. ¶ 13.)

After considering the offer, Cox rejected it, telling Murphy that a 36 month reduction was not enough incentive. Martinez and Sinclair also rejected the plea deal. All three defendants stood trial, and on November 8, 1993, the jury, after sixteen days of deliberations: (i) found Cox guilty under Counts III, IV, V, VI and VIII, (ii) found Martinez guilty under Counts VI and VIII, and (iii) acquitted Sinclair of all charges.[6]

## B. Pre–Sentencing Motions

On December 14, 1993, Probation Officer John Hannigan ("Hannigan") circulated for comment a draft Presentence Investigation Report ("PSR"). In it, he determined that Counts III, IV and VI

deal would have resulted in a sentence of eleven years and some months. It is unclear how they arrived at this calculation. Whether the deal would have resulted in a sentence of eleven or twelve years is not, however, germane to the analysis of Cox's § 2255 Motion.

5. DiBagio, Murphy, Ticknor, and Needleman assumed that: (i) Counts III, IV, and V would group with Counts VI, VII, and VIII pursuant to § 3D1.1 of the Guidelines, (ii) the adjusted offense level would be 32, and (iii) the two 924(c) charges (Counts V and VIII) would jointly carry a consecutive sentence of 60 months. (Agreed Statement Facts ¶ 3.)

The sentencing range for offense level 32 and criminal history category I was 121 to 151 months. The total sentence, including the 60 consecutive months for Counts V and VIII, would have been in the range of 181 to 211 months. DiBagio and Ticknor's 180 month prediction must, therefore, have been based on a sentence at the low end of the range.

6. The Court dismissed Count VII on the seventeenth day of trial.

grouped under § 3D1.2. For these three counts he calculated a final offense level, after all adjustments, of 32. Next, Hannigan determined Cox's criminal history category to be I based on zero criminal history points. This resulted in a Guideline sentencing range for these three counts of 121 to 151 months. Finally, Hannigan considered the two 924(c) convictions (Counts V and VIII). Under the statute, a defendant's first conviction carries a mandatory consecutive sentence of at least 60 months. 18 U.S.C. 924(c)(1)(A). A second or subsequent conviction carries a mandatory consecutive sentence of 240 months. *Id.* § 924(c)(1)(C)(i). Hannigan determined that Counts V and VIII "grouped," and he recommended a single consecutive sentence of 60 months.[7] For all five counts of conviction, the draft PSR calculated a final combined sentencing range of 181 to 211 months.[8]

The government objected to the draft PSR positing that Cox should be sentenced in the range of 535 to 593 months. The government made two arguments: (i) that Count VI should not be grouped with Counts III and IV,[9] and (ii) that the second 924(c) conviction (Count VIII) called for a 240 month sentence to run consecutive to the 60 month sentence under Count V and consecutive to the sentence imposed on the other Counts.

The government's positions are set out in its objections to the draft PSR. With respect to the 924(c) convictions, the government relied on the then-recent Supreme Court decision in *Deal v. United States*, 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993).[10] The *Deal* Court held that the enhanced penalty for a second 924(c) conviction applies even where the second 924(c) conviction is obtained in the same prosecution (and the same judgment) as the first 924(c) conviction. 508 U.S. at 131–35, 113 S.Ct. 1993. The government argued that Cox's second 924(c) conviction (Count VIII) carried a mandatory consecutive sentence of 240 months.

On January 18, 1994, Hannigan prepared a revised PSR. The revised PSR adopted the government's positions on both § 3D1.2 and *Deal.* By not grouping Count VI with Counts III and IV, Hannigan calculated an adjusted offense level of 38, criminal history I. The Guideline sentencing range for these counts was 235 to 293 months. Second, Hannigan stated that Count V carried a mandatory 60 month consecutive sentence and Count VIII, as the second 924(c) conviction, carried a mandatory 240 month consecutive sentence. Cox was, therefore, facing a sentence in the range of 535 to 593 months under the revised PSR.

After receiving the revised PSR, Murphy did his own research on the § 3D1.2 and *Deal* issues. Murphy disagreed with Hannigan, concluding that Count VI should be grouped with Counts III and IV, and that *Deal* did not apply.[11] (Agreed

---

7. Hannigan believed that Count VIII did not carry a 240 month sentence because the second 924(c) conviction was in the same judgment as Cox's first 924(c) conviction.

8. A sentence at the low end of this range would be consistent with DiBagio and Ticknor's pre-trial analysis.

9. Section 3D1.2(d) lists thirty-five offenses that are excluded from the grouping rules. The government argued that Count VI (Conspiracy to Commit a Violent Act in Aid of a Racketeering Activity) was one of those thirty-five offenses.

10. *Deal* was decided on May 17, 1993, fifty-seven days prior to the plea discussions. Neither DiBagio, Ticknor nor Murphy were aware of the case or its potential implications. (Gov't Mem. Opp. M. to Withdraw at 5 n. 4.)

11. Murphy, therefore, would have calculated the same maximum sentence as had DiBagio and Ticknor.

Statement Facts ¶ 9.) Murphy also consulted with "sentencing guru" Judy Clark ("Clark"), who opined that the government's § 3D1.2(d) argument was wrong,[12] and that *Deal* did not apply.[13] (*Id.;* R. at 777–84.)

On May 12, 1994, Murphy filed a Motion to Withdraw on the ground that a conflict existed between Cox and himself. It was Cox's position that "had he been advised by [Murphy] before trial that he was facing the possibility of the sentence now urged by the government [535 to 593 months], he would have accepted the plea agreement proposed by the government." On June 7, 1994, this Court granted Murphy's Motion to Withdraw and appointed M. Brooke Murdock (now an Associate Judge of the Circuit Court for Baltimore City) to represent Cox. Murdock filed several sentencing memoranda on Cox's behalf.[14]

## C. The Sentencing Hearing

At the three day sentencing (April 14, 17 and 18, 1995), Murphy and Cox testified in support of the Motion for a Downward Departure Based on Ineffective Assistance of Counsel. Murphy said that he had been ineffective for failing to independently evaluate Cox's maximum exposure under the Guidelines, and incorrectly advising Cox that the maximum sentence he would receive if convicted at trial was only 180 months. Nevertheless, he gave the advice to Cox in good faith believing it to be

12. Clark reasoned that subsections (a), (b) and (c) of § 3D1.2 did not exclude grouping Count VI with the Counts III and IV

13. Murphy testified that he also consulted with Larry Nathans, a seasoned defense attorney. (R. at 777.)

14. These included: (i) a Motion Objecting to Hannigan's Decision Not to Group Count VI with Counts III and IV, (ii) a Motion for a Downward Departure Under § 5K2.0 Based on Ineffective Assistance of Counsel, (iii) a

correct, Murphy also testified. (Agreed Statement Facts ¶ 7.)

At the conclusion of the three day hearing, this Court rejected the government's § 3D1.2 and *Deal* arguments and imposed a total sentence of 270 months. In reaching this sentence, the Court stated "my view is that Counts III, IV and VI do properly group under § 3D1.2(a) and (b)." (R. at 954.) With respect to the *Deal* argument, the Court stated "my view is that … the two gun counts 'merge,' for want of a better word and, therefore, Mr. Cox should receive a consecutive 5 year sentence because of the two counts, rather than a consecutive 25 year sentence."[15] (*Id.* at 968.) The Court, therefore, approved the calculations in the draft PSR: (i) base offense level 32 for Counts III, IV and VI, and (ii) a mandatory consecutive 60 month sentence for Counts V and VIII.

Having done this, the Court made one further ruling that increased Cox's sentence beyond the sentencing range in the draft PSR. The Court imposed a 3 level role enhancement pursuant to § 3B1.1(b) "to differentiate Mr. Cox's role from the role played by Mr. Umegbolu above him and the role played by others such as Mr. Faulkner [and] Mr. Deair who were below him and subject to his control." (R. at 917.) This resulted in an adjusted offense level 35, criminal history category I. The Guideline sentencing range was 168 to 210 months for Counts III, IV and VI.

Motion Objecting to an Upward Adjustment Under § 3B1.1(a), and (iv) Motion for a Downward Departure Based on Aberrant Behavior.

15. The Court agreed with defense counsel's argument that *Deal* applies when a defendant uses a gun on separate occasions to commit separate crimes. In Cox's case, the Court reasoned that he "was going to use the guns … to commit what was essentially one violation which was in the murder scheme." (R. at 968.)

The Court imposed a sentence of 210 months for Counts III, IV and VI and a consecutive sentence of 60 months for Counts V and VIII. The judgment was as follows:

| Offense | | Imprisonment |
|---------|---|-------------|
| Count III | Conspiracy to Travel in Interstate Commerce with Intent to Commit a Murder for Hire | 60 months (concurrent with IV & VI) |
| Count IV | Travel in Interstate Commerce to Commit a Murder for Hire | 120 months (concurrent with III & consecutive with VI) |
| Count V | Use of a Firearm in Connection with a Crime of Violence | 60 months (concurrent with VIII & consecutive to all others) |
| Count VI | Conspiracy to Commit a Violent Act in Aid of a Racketeering Activity | 90 months (concurrent with III & consecutive with IV) |
| Count VIII | Use of a Firearm in Connection with a Crime of Violence | 60 months (concurrent with V & consecutive to all others) |

The total term of imprisonment was 270 months.

On February 18, 1998, the Fourth Circuit affirmed Cox's conviction and sentence. *United States v. Martinez*, 136 F.3d 972 (4th Cir.1998).

### D. Cox Files a § 2255 Motion

Cox timely filed the instant § 2255 Motion. Cox argues that he received ineffective assistance of counsel. Specifically, Cox alleges that Murphy's assistance was deficient because he failed to make an independent assessment of the Guidelines. Had Murphy properly advised him of the maximum sentence he faced under the Guidelines, Cox maintains, he would have agreed to the government's plea offer.

■ On October 20, 2002, the Court appointed Arcangelo M. Turminelli ("Turminelli") to represent Cox in the § 2255 proceeding. Turminelli filed a supplement to Cox's § 2255 Motion and the government filed a supplemental response. On December 18, 2003, the parties submitted an agreed statement of facts. On December 19, 2003, the Court held a hearing.[16] In October 2004, the parties filed additional briefs at the direction of the Court. The central issue in this case is whether Murphy was ineffective for failing to do an independent evaluation of the maximum sentence Cox likely faced under the Guidelines if he were convicted on all counts.[17]

**16.** An evidentiary hearing was unnecessary because the parties submitted an agreed-upon statement of facts, and the Court had on file the transcripts from the three day sentencing hearing in April 1995 where both Murphy and Cox testified on precisely this issue.

**17.** Turminelli, at the direction of his client, filed a letter asking the Court to take notice of the Supreme Court's decision in *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531,

159 L.Ed.2d 403 (2004). Cox contends that his sentence was imposed in violation of *Blakely*. This argument fails because *Blakely* and *United States v. Booker*, — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), do not apply retroactively to criminal cases that became final before January 12, 2005. *See McReynolds v. United States*, 397 F.3d 479 (7th Cir.2005); *United States v. Gaulden*, Civil No. CCB–04–292 (D.Md.2005).

## II. ANALYSIS

When assessing whether a defendant has received effective assistance of counsel, the Court must determine whether defense counsel's performance fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When making this determination, the Court should be "highly deferential" to the decisions made by defense counsel. Unless proven otherwise, a court must assume that a defense counsel's performance falls within the "wide range of professional assistance." *Id.* at 689, 104 S.Ct. 2052. If the Court concludes that a defense counsel's performance was not objectively reasonable, the Court must then determine "whether counsel's performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The *Strickland/Hill* test applies where, as here, the ineffective assistance allegedly caused the defendant to reject an advantageous plea agreement and proceed to trial. *See, e.g., United States v. Day*, 969 F.2d 39, 42–43 (3d Cir.1992).

### A. Murphy's Performance Did Not Fall Below an Objective Standard of Reasonableness

■ "To show that counsel's representation fell below an objective standard of reasonableness on the ground that trial counsel failed to accurately predict the maximum potential sentence under the Sentencing Guidelines, a defendant must show that trial counsel failed to provide good-faith advice about the sentencing consequences." *United States v. Gwiazdzinski*, 141 F.3d 784, 790 (7th Cir.1998).

While Murphy did not work his way through the various sections of the Guidelines, he consulted with experienced criminal lawyers. DiBagio was a veteran federal prosecutor who worked with the Guidelines on a regular basis. Ticknor, a seasoned defense attorney, is a long time member of the CJA panel in this District. The advice Murphy relied upon came from reliable sources.

■ It would have been preferable for Murphy to have worked through the Guidelines himself before advising Cox. Such an analysis would not have changed the outcome, however. Murphy did his own research after receiving the Government's objections to the draft PSR, and he arrived at the same conclusions as had Ticknor and DiBagio: (i) Count VI should group with Counts III and IV, (ii) the adjusted offense level should be 32, (iii) *Deal* does not apply, and (iv) the two 924(c) convictions should carry a total consecutive sentence of 60 months. Moreover, Murphy consulted with "sentencing guru" Judy Clark, who also agreed with these conclusions.

After the three day sentencing hearing, the Court also agreed with this analysis. Cox's sentence differed from the 180 month pre-trial prediction for two reasons: (i) the Court determined that Cox should receive a 3 level upward adjustment for his role as a leader and organizer, and (ii) the Court sentenced Cox at the high-end of the Guideline sentencing range. Accordingly, it was the discretionary rulings of the Court that resulted in the disparity between the pre-trial prediction and Cox's sentence. An attorney cannot be deemed ineffective for failing to predict such discretionary rulings. As the Seventh Circuit noted: "the sentencing consequences of guilty pleas (or, for that matter, guilty verdicts) are extraordinarily difficult to predict. Although the sentencing guidelines significantly restricts the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain

art." *United States v. Barnes,* 83 F.3d 934, 940 (7th Cir.1996).

The Court finds that Murphy had a good faith basis for his advice regarding Cox's sentencing exposure, and his advice was reasonable. Accordingly, Murphy's performance did not fall below an objective standard of reasonableness as defined by *Strickland.* Because Murphy's performance did not fall below an objective standard of reasonableness, the Court need not address whether Cox has established prejudice.

## III. CONCLUSION

For the reasons stated herein, the Court will, by separate Order, deny Cox's § 2255 Motion.

### ORDER

For the reasons stated in the Memorandum of even date, the Court hereby:

(i) DENIES Steven Cox's § 2255 Motion [Docket No. 278]; and

(ii) DIRECTS the Clerk to CLOSE this case.